Patrick W. Munson (AK Bar No. 1205019)
Brooks W. Chandler (AK Bar No. 8310109)
Charles A. Cacciola (AK Bar. No. 1306045)
Chandler, Falconer, Munson & Cacciola, LLP
911 W. 8th Avenue, Suite 302
Anchorage, Alaska 99501
(907) 272-8401

Attorneys for Movant Kuukpik Corporation

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SOVEREIGN IÑUPIAT FOR A LIVING ARCTIC, *et al.*,<br><br>　　　　　　　　　Plaintiffs,<br><br>　　vs.<br><br>BUREAU OF LAND MANAGEMENT, et al.,<br><br>　　　　　　　　　Defendants. | Case No. 3:23-cv-00058-SLG |

## MOTION TO INTERVENE BY KUUKPIK CORPORATION

Kuukpik Corporation, pursuant to Fed. R. Civ. P. 24, moves to intervene in the above-captioned case and should be permitted to intervene by right and additionally upon the Court's discretion. Plaintiffs and federal defendants take no position regarding this motion. All other parties have stated that they do not oppose the motion. Filed herewith are exhibits, a proposed order, and Kuukpik's proposed preliminary answer to the complaint.

### I. BACKGROUND

Even at this preliminary state, the project described by the Willow Master Development Plan ("Willow"), the questions presented in this case, and the case's

present posture have been thoroughly summarized elsewhere.[1] Kuukpik therefore focuses on factual background specific to Kuukpik's intervention in this case.

Kuukpik was formed pursuant to the Alaska Native Claims Settlement Act ("ANCSA") as the Alaska Native village corporation to represent the community of Nuiqsut, Alaska, the village closest to Willow.[2] As the local village corporation, Kuukpik's twin goals are protecting the subsistence lifestyle and culture of the Native residents of Nuiqsut while also providing for the long-term economic needs of its shareholders.[3] To achieve these goals and as required by ANCSA, Kuukpik has selected and received title to thousands of acres of surface estate around Nuiqsut. This selected and conveyed surface estate includes tens of thousands of acres in the National Petroleum Reserve - Alaska ("NPR-A") between the village and the Willow site.[4] That land, conveyed by the United States in partial settlement of Alaska Natives' claims to aboriginal title, is the birthright of the Kuukpikmiut and an integral component of Nuiqsut's subsistence culture.[5] Under ANCSA, Kuukpik has a duty to manage and use these lands to provide for economic benefits and to carry on the subsistence way of life that has sustained the Kuukpikmiut for generations—a duty that Kuukpik has defended

---

[1] *E.g.,* Mot. Intervene by ConocoPhillips Alaska, Inc., (Doc. 5), pp. 3-5; ASRC's Mem. In Supp. Mot. To Intervene (Doc. 15), pp. 8-12; Mem. ISO. Pls.' Mot. For Temp. Restraining Order and Preliminary Inj. (Doc. 23-1), pp.2-6; North Slope Borough Mot. To Intervene (Doc. 28), pp. 7-10.

[2] Aff. of Joe Nukapigak, ¶ 2, filed herewith as Exhibit A.

[3] Ex. A, ¶ 3; Decl. Rex. A. Rock (Doc. 16), ¶ ¶ 6, 7; *see also* 43 U.S.C. §1601(b).

[4] *See* Excerpts from Final Supplemental Environmental Impact Statement, filed herewith as Exhibit B, p. 6.

vigorously since oil was discovered under and around its lands decades ago.[6] These rights and history of self-determination are central to Kuukpik's identity and its role in this case.

Kuukpik's role representing the community has increased over the decades. The corporation recently authorized and issued a new class of stock to ensure that a younger generation could actively participate in the corporation's activities and be represented on the board.[7] Today, Kuukpik has over 600 Alaska Natives shareholders, approximately 244 residing in Nuiqsut and 437 in the North Slope Borough.[8] Even before expanding enrollment, the majority of households in Nuiqsut held Kuukpik shares.[9]

As a landowner and caretaker of Nuiqsut's birthright and subsistence lifestyle, Kuukpik understands perhaps better than anyone the balance that must be struck between development and the long-term health of the people of Nuiqsut, the Kuukpikmiut. Oil development on their traditional lands has heated the community's homes,[10] built its schools,[11] and provided road access to hundreds of square miles of

---

[5] Ex. A, ¶¶ 4,5; Decl. Rex. A. Rock (Doc. 16), ¶ ¶ 6, 7; *see also* 43 U.S.C. §1601(b).

[6] Ex. A, ¶ ¶ 3,9; *see also* Decl. Rex. A. Rock (Doc. 16), ¶ ¶ 6, 7.

[7] Ex. B, p 8.

[8] Ex. A, ¶ 7.

[9] Ex. B, p. 19.

[10] Ex. A, ¶ 8.

[11] Decl. of Harry K. Brower, Jr. in Supp. of Intervention (Doc. 28-1), ¶¶ 8-9.

subsistence lands that were previously more difficult and costly to reach.[12] Nevertheless, with these benefits have come significant, tangible, and undeniable costs. Kuukpik has worked for decades to ensure that the balance of costs and benefits tilts in favor of Nuiqsut, the Kuukpikmiut, and the long-term health and well-being of its community and Kuukpik's shareholders.[13]

Kuukpik has historically supported only balanced and responsible oil and gas development near Nuiqsut and on Kuukpik's ANCSA lands.[14] Kuukpik has opposed development that did not meet that high standard, including—notably—Conoco's original proposal to develop Willow and <u>all</u> of the alternatives analyzed in the first NEPA process.[15] Since 2018, few entities have been more vocal and detailed in their position on Willow than Kuukpik.

The weight of these responsibilities has informed all of Kuukpik's actions during the process of planning, analyzing, and evaluating Willow.[16] Although Willow will not be constructed on Kuukpik-owned land, Kuukpik's lands are the gateway to Willow. The gravel roads and pipelines that will connect Willow to existing infrastructure will cross Kuukpik's private property.[17] That infrastructure and traffic will be six miles or so

---

[12] Ex. A, ¶ 11.

[13] Ex. A, ¶¶ 8-10, 13.

[14] *Id.*, ¶ 9.

[15] *Id.*, ¶¶ 10, 13.

[16] *E.g.,* Joe Nukapigak Letter to Sec. Haaland (February 23, 2023), filed herewith as Exhibit C.

[17] Ex. B, p. 20.

Mot. to Intervene by Kuukpik Corp.

Case 3:23-cv-00058-SLG   Document 35   Filed 03/20/23   Page 4 of 15

north of city limits (not within the city where the municipal government has jurisdiction), on land owned by Kuukpik or the federal government.[18] Kuukpik's shareholders have used, and will continue to use, the Willow Project area for decades for subsistence and recreation. The Project's impacts are not theoretical for Kuukpik; they are as real as they can possibly be.

Kuukpik is one of five tribal entities and ANCSA corporations "whose members could be substantially affected by the Project," and the only village corporation, with which BLM initiated consultations.[19] Nonfederal surface ownership in the EIS analysis area includes 141,783.1 acres (5.9% of the area) of land conveyed to Kuukpik and additional lands Kuukpik has selected that are not yet conveyed.[20]

Through more than five years of Willow planning, Kuukpik has worked with BLM, ConocoPhillips, and other stakeholders to try to reduce impacts, increase long-term benefits, and develop project alternatives that Kuukpik and most of the affected community of Nuiqsut can support.[21] Until recently, Kuukpik was not satisfied that the proposed alternatives achieved those goals.[22]

That is no longer the case. Kuukpik, BLM, and other stakeholders have used the extensive NEPA process to develop an alternative with broad support in Nuiqsut[23] and

---

[18] Ex. A, ¶ 12.

[19] Ex. B, p. 2.

[20] Ex. B, 6.

[21] Ex. A, ¶¶ 10, 13.

[22] *See id.*.

[23] *Id.*, ¶¶ 10, 13.

the North Slope Borough.[24] That accomplishment required many hard conversations and decisions to be made; no entity achieved everything they wanted. But Alternative E as ultimately approved in the Record of Decision ("ROD") describes a project that Kuukpik—the most affected landowner and the Alaskan Native Corporation representative of Nuiqsut—as well as nearly every other major *local* stakeholder supports.

## II. FED. R. CIV. P. 24 AND ITS 9ᵀᴴ CIRCUIT APPLICATION.

> A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a *practical* interest in the outcome of a particular case to intervene, [courts] often prevent or simplify future litigation involving related issues; at the same time, [courts] allow an additional interested party to express its views before the court.[25]

### A. Rule 24(a) – Intervention By Right.

> (a) On timely motion, the court must permit anyone to intervene who:
>
> (1) is given an unconditional right to intervene by a federal statute; or
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.[26]

When analyzing a motion to intervene of right under Rule 24(a)(2), the Ninth Circuit applies a four-part test:

---

[24] *See generally* Decl. of Harry K. Brower, Jr. in Supp. of Intervention (Doc. 28-1).

[25] *U.S. v. City of Los Angeles*, 288 F. 3d 391, 397-398 (9th Cir. 2002) (emphasis in original) (quotation marks omitted).

[26] Fed. R. Civ. P. 24(a).

MOT. TO INTERVENE BY KUUKPIK CORP.

Case 3:23-cv-00058-SLG   Document 35   Filed 03/20/23   Page 6 of 15

(1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.[27]

"Generally, Rule 24(a)(2) is construed broadly in favor of proposed intervenors and '[courts] are guided primarily by practical considerations.'"[28]

### B. Rule 24(b) – Permissive Intervention.

On timely motion, the court may permit anyone to intervene who: "(B) has a claim or defense that shares with the main action a common question of law or fact."[29]

Permissive intervention may be granted when there is: "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action."[30] "Rule 24(b) 'plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation.'"[31]

### III. ARGUMENT

Some parties have tremendous financial interests in this case; others political ones. No other entity in Nuiqsut, or elsewhere, will experience the direct and tangible

---

[27] *Wilderness Soc. v. US Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011).

[28] *United States ex rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1394 (9th Cir.1992).

[29] Fed. R. Civ. P. 24(b)(1)(B).

[30] *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011).

impacts to their property or way of life as Kuukpik and its shareholders. Kuukpik does not speak for everyone in the Nuiqsut community. No single person or entity does or should. Kuukpik seeks to intervene to protect the collective rights and interests of its shareholders, to express the views of its board of directors (most of whom helped re-settle Nuiqsut in 1973) and because this case directly affects use of Kuukpik land conveyed to Kuukpik under ANCSA which Kuukpik is to use for the benefit and self-determination of its Native shareholders.

Kuukpik believes it is imperative that the Court hear from those with the most at stake in this Project, in addition to the vocal — but mostly outside — stakeholders who are so far participating in these lawsuits.

**A. Kuukpik may intervene by right under Rule 24(a).**

*1. Kuukpik's motion is timely.*

"Courts weigh three factors in determining whether a motion to intervene is timely: '(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay.'"[32]

The complaint was less than a week ago. Several parties have subsequently sought to intervene. The defendants have not yet answered the complaint. The action remains in its earliest stage.

---

[31] *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002) (*quoting SEC v. U.S. Realty & Improvement Co*., 310 U.S. 434, 459 (1940), overruled in part on other grounds by *Wilderness Soc*., 630 F.3d at 1178.

MOT. TO INTERVENE BY KUUKPIK CORP.

Kuukpik is aware of the Order Re Pending Motions and Briefing Schedule for Motion for Temporary Restraining Order and Preliminary Injunction and will adhere to it.[33] Kuukpik cannot conceive of how any party could be prejudiced by intervention within a week of plaintiffs filing their complaint.

Insofar as less than a week between the filing of the complaint and seeking intervention is considered delay, Kuukpik's board desired to thoroughly consider not only the issues presented by the complaint and what Kuukpik may be able to contribute, but what a decision to do so, or to abstain, means for its shareholders and the Nuiqsut community.[34] In light of these facts, Kuukpik's motion is timely.

*2. Kuukpik has significantly protectable interests relating to the subject of this action.*

The Court need look no further than the ROD and Final Supplemental EIS to determine that this factor is satisfied. Kuukpik is one of five tribal entities and ANCSA corporations "whose members could be substantially affected by the Project," and the only village corporation with which BLM initiated consultations.[35] Kuukpik is identified as a permitting authority because it is a landowner with the right to control access to and activities on its privately owned lands near Willow.[36] The EIS analysis

---

[32] *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) (*quoting Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc*., 309 F.3d 1113, 1119 (9th Cir.2002)).

[33] *See* Doc. 32.

[34] *See* Ex. A, ¶ 14.

[35] Ex. B, p. 2.

[36] Ex. B, p. 3.

MOT. TO INTERVENE BY KUUKPIK CORP.

area includes 141,783 acres that have already been conveyed to Kuukpik (5.9% of the total area,) and additional lands Kuukpik has selected that are not yet conveyed.[37] Willow pipelines will be located on Kuukpik lands.[38] In short, Kuukpik has an undeniable interest, not just in *whether* Willow proceeds, but *in the way* Willow proceeds because the Project—from construction to execution—requires use of Kuukpik land, will impact Kuukpik lands, and will affect its shareholders and their subsistence activities and culture for decades to come.

Kuukpik also has an interest in preserving various mitigation measures that Kuukpik advocated for throughout the NEPA process and which are included in the Record of Decision. Most importantly, quoting Kuukpik's February 23, 2023 letter to Secretary Haaland, the ROD specifically directs BLM to take action to implement Kuukpik's recommendations regarding durable protections of the Teshekpuk Lake area, which is expected to result in protective measures that are more beneficial to subsistence resources than anything previously put in place.[39] Kuukpik is proud that the ROD directs BLM to advance Kuukpik's recommendation. The corporation is heavily invested in ensuring that BLM takes the actions directed to achieve these protections.[40]

---

[37] Ex. B, p. 6.
[38] Ex. B. p. 20.
[39] ROD (Doc. 23-13), p. 77.
[40] Ex. C.

Kuukpik does not want to see this directive vacated, which is part of the relief the plaintiffs would obtain if successful.[41]

Kuukpik shareholders are also expected to derive modest financial benefits from the Project. Again, uncontested portions of the EIS describe Kuukpik and its shareholders' stake in the Project. "Local industry support companies, such as those owned by Kuukpik and ASRC, would likely earn revenues from the Project, increasing corporation dividends that would contribute to local and regional household incomes."[42] "Nuiqsut residents are also most likely to receive income from development, through wage employment or Kuukpik dividends."[43] "Occupancy of the Kuukpik Hotel, with typical clients being agency visitors and oil-field workers, would likely increase during construction …."[44] While the other intervenors' financial stake in the outcome of the Project dwarfs that of Kuukpik, each of these benefits would contribute to Kuukpik's overall financial success and therefore to our shareholders.

*3. Disposition of the action may, as a practical matter, impair or impede the Kuukpik's ability to protect those interests.*

"If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene[.]"[45]

---

[41] Plaintiffs' Prayer for Relief, ¶ 5.

[42] Ex. B, p. 15.

[43] Ex. B, p. 22.

[44] Ex. B, 13.

[45] *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011).

MOT. TO INTERVENE BY KUUKPIK CORP.

As described above, Kuukpik's interests in the orderly and timely development of its land, in its Nuiqsut-based businesses, and its congressionally assigned duty to provide for the real economic and social needs of its shareholders are substantially affected by a decision to allow Willow to proceed or not, the fundamental issue in this case, and by a decision whether to uphold the decision put forward in the ROD.

4. *Kuukpik's interests are inadequately represented by the existing parties.*

In determining whether a would-be intervenor's interests will be adequately represented by an existing party, courts consider: "(1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect."[46]

The existing parties collectively represent interests that are similar to or overlapping with some of Kuukpik's interests. For example, ASRC also seeks to protect the financial interests of its Alaska Native shareholders, and to ensure the impacts on its shareholders' subsistence use is no greater than necessary.[47] Kuukpik's strong interest in protecting the subsistence traditions of its shareholders overlaps with interests asserted by several parties. The North Slope Borough's taxing interest aligns in part with Kuukpik's interests in business opportunities for its Nuiqsut-based businesses and economic opportunities for Nuiqsut residents.[48] However, the value and importance of

---

[46] *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (*quoting Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 838 (9th Cir.1996)).

[47] *See* ASRC's Mem. In Supp. Mot. To Intervene (Doc. 15), pp. 4-19.

[48] North Slope Borough Mot. To Intervene (Doc. 28), pp. 16-17.

these similar interests to the existing parties materially differs from their value and importance to Kuukpik: not necessarily lesser or greater, but significantly different.

Kuukpik's diverse and complex interests make it uniquely situated – legally and physically. No other party's existential purpose is providing for the economic and social needs of Alaska Natives of the Nuiqsut area at the time ANCSA was adopted and their descendants. No other party is based in Nuiqsut. And no other party has privately-owned surface lands that are directly and substantially affected by Willow. These interests differentiate Kuukpik from all existing parties.

On a more specific level, it is at least doubtful that any other party shares Kuukpik's unique interest in ensuring that *this* Record of Decision is upheld. Kuukpik worked very hard for over five years to reduce the impacts and risks associated with the Willow Project. The ROD at issue in this case includes design features and mitigation measures for which Kuukpik has long advocated, and which Kuukpik wants included in the Project that is ultimately constructed. The current parties do not represent this position; rather, they seemingly support any version of the Project that allows economic recovery of oil and gas resources, or they seemingly oppose any version of the Project. Thus, no party currently represents Kuukpik's position: Kuukpik wants to see the project described in this ROD proceed. Kuukpik does not want to go back and study other alternatives that may lead to a different outcome that other plaintiffs or defendants may prefer, changing the balance that Kuukpik supports. Kuukpik may be the only party that has chosen to support Alternative E and many of the mitigation measures in the

ROD because the Corporation views that version of the Project as the most balanced and responsible alternative available. This position is not adequately shared by any existing party.

Kuukpik therefore satisfies the requirements for intervention by right and respectfully requests the Court grant the motion on that basis.

**B.     Kuukpik satisfies the standards for permissive intervention under Rule 24(b).**

Kuukpik satisfies the criteria for permissive intervention:[49] Federal question jurisdiction is applicable to Kuukpik's interest in the ROD and opposition to plaintiffs' requested relief, this motion is timely, and the questions of law and fact that Kuukpik intends to address are integral to the main action.

While the criteria are satisfied, the reason for allowing Kuukpik to intervene is the importance of allowing "an additional interested party to express its views before the court."[50] Kuukpik does not profess expertise in global climate change,[51] or the arcana of BLM oil and gas leases.[52] Kuukpik's expertise is managing over 100,000 acres of its shareholders' ancestral lands for the continuation of the living culture of the Kuukpikmiut. That culture cannot exist without the lands – rich in ways their ancestors understood and in ways they could not have dreamed of – and the people cannot exist

---

[49] *See Freedom from Religion Found., Inc.*, 644 F.3d at 843.

[50] *City of Los Angeles*, 288 F. 3d at 398.

[51] *See e.g.*, Complaint, ¶ ¶ 13, 32.

[52] *See e.g., id.*, at ¶ ¶ 37, 102, 113, 119.

MOT. TO INTERVENE BY KUUKPIK CORP.

on the lands if the Nuiqsut community is without economic resources. Kuukpik was created to give this culture a voice and thrives because it uses it.

## IV. CONCLUSION

Kuukpik requests that the Court grant its motion, finding that Kuukpik has the right to intervene and that the Court permissively allows it to do so.

Dated: March 20, 2023.

                CHANDLER, FALCONER, MUNSON & CACCIOLA, LLP

                Attorneys for Movant Kuukpik Corporation

                By: /s/ Patrick W. Munson
                     Patrick W. Munson
                     AK Bar No. 1205019

                By: /s/ Brooks W. Chandler
                     Brooks W. Chandler
                     AK Bar No. 8310109

                By: /s/ Charles A. Cacciola
                     Charles A. Cacciola
                     AK Bar No. 1306045