Matthew Singer, ABA No. 9911072
Andrew P. March, ABA No. 2201003
SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, Alaska 99501
Telephone:   (907) 339-7125
Facsimile:    (503) 796-2900
msinger@schwabe.com
amarch@schwabe.com

*Attorneys for Amici Curiae Alaska Business, Union, and Trade Groups*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SOVEREIGN INUPIAT FOR A LIVING ARCTIC, ALASKA WILDERNESS LEAGUE, ENVIRONMENT AMERICA, NORTHERN ALASKA ENVIRONMENTAL CENTER, SIERRA CLUB, and THE WILDERNESS SOCIETY,<br><br>        Plaintiffs,<br><br>  v.<br><br>BUREAU OF LAND MANAGEMENT, U.S. FISH & WILDLIFE SERVICE, and U.S. DEPARTMENT OF THE INTERIOR,<br><br>        Defendants.<br><br>  and<br><br>CONOCOPHILLIPS ALASKA, INC., ARCTIC SLOPE REGIONAL CORPORATION, NORTH SLOPE BOROUGH, and KUUKPIK CORPORATION,<br><br>        Intervenor-Defendants. | Case No. 3:23-cv-00058-SLG |

**BRIEF OF *AMICI CURIAE* ALASKA BUSINESS, UNION, AND TRADE GROUPS IN SUPPORT OF DEFENDANTS' AND INTERVENOR-DEFENDANTS' OPPOSITIONS TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

INTEREST OF *AMICI CURIAE* ................................................................................... 1

ARGUMENT .................................................................................................................. 5

    I.    THE PUBLIC INTEREST IN ADVANCEMENT OF THE WILLOW PROJECT WEIGHS DECISIVELY AGAINST AN INJUNCTION ........... 5

        A.    The Public Interest Favoring the Willow Project is Reflected in Widespread Support Amongst a Majority of Stakeholders ............... 6

        B.    An Injunction Would Harm the Public Interest in Job Creation, Responsible Resource Development, and Attendant Revenues ......... 8

        C.    An Injunction Would Undermine the Public Interest in Energy Security ....................................................................................... 10

CONCLUSION ............................................................................................................ 10

# TABLE OF AUTHORITIES

**CASES**

*Cal. Pharmacists Ass'n v. Maxwell-Jolly*,
    596 F.3d 1098 (9th Cir. 2010) ............................................................................. 5

*Drakes Bay Oyster Co. v. Jewell*,
    747 F.3d 1073 (9th Cir. 2014) ............................................................................. 5

*Earth Island Inst. v. Carlton*,
    626 F.3d 462 (9th Cir. 2010) ............................................................................... 5

*HiQ Labs, Inc. v. LinkedIn Corp.*,
    938 F.3d 985 (9th Cir. 2019) ............................................................................... 5

*Macdonald v. Univ. of Alaska*,
    2020 U.S. Dist. LEXIS 90125 (D. Alaska 2020) ................................................. 5

*Pac. Rivers Council v. United States Forest Serv.*,
    942 F. Supp. 2d 1014 (E.D. Cal. 2013) ............................................................... 8

*Shell Offshore Inc. v. Greenpeace, Inc.*,
    864 F. Supp. 2d 839 (D. Alaska 2012) ................................................................ 5

*Signal Hill Serv. v. Macquarie Bank, Ltd.*,
    2011 U.S. Dist. LEXIS 165858 (C.D. Cal. June 29, 2011) .................................. 8

*W. Watersheds Project v. Salazar*,
    2011 U.S. Dist. LEXIS 151556 (C.D. Cal. Aug. 10, 2011) ................................. 8

*W. Watersheds Project v. Salazar*,
    692 F.3d 921 (9th Cir. 2012) ............................................................................... 5

*Winter v. Natural Res. Def. Council*,
    555 U.S. 7 (2008) ................................................................................................ 5

*Wyoming v. United States DOI*,
    136 F. Supp. 3d 1317 (D. Wyo. 2015) ................................................................ 8

# INTEREST OF *AMICI CURIAE*

*Amici curiae* are the Alaska State Chamber of Commerce ("Chamber"), Alaska Miners Association, Associated General Contractors of Alaska, Alaska Oil and Gas Association, Alaska AFL-CIO, Alaska Trucking Association, Alaska Policy Forum, Alaska Support Industry Alliance, Alaska District Council of Laborers, Resource Development Council for Alaska, Inc., Teamsters Local 959, Alaska Bankers Association, and Council of Alaska Producers (collectively "Alaska Business, Union, and Trade Groups"). *Amici* have worked together—in various combinations—as a coalition to advance the Willow Master Development Plan ("Willow Project"). All *amici* thus have a substantial interest in this litigation, and in the outcome of Plaintiffs'[1] motion for temporary restraining order and preliminary injunction.

**Alaska State Chamber of Commerce:** Founded in 1953, the Chamber is Alaska's largest business advocacy organization and has been a leading voice for Alaska businesses since its inception. The Chamber has over 700 members, representing 58,000 Alaskan workers, and $4.6 billion in annual wages. As part of its mission to promote a healthy business environment in Alaska, the Chamber has long prioritized responsible development of Alaska's resources. For over a decade, the Chamber has specifically prioritized responsible development in Alaska's federal areas, including the National Petroleum Reserve-Alaska ("NPRA").

---

[1] Plaintiffs are Sovereign Inupiat for a Living Arctic, Alaska Wilderness League, Environment America, Northern Alaska Environmental Center, Sierra Club, and the Wilderness Society.

BRIEF OF *AMICI CURIAE* ALASKA BUSINESS, UNION, AND TRADE GROUPS  PAGE 1 OF 11
*SOVEREIGN INUPIAT FOR A LIVING ARCTIC, ET AL. V. BLM, ET AL.*  CASE NO. 3:23-CV-00058-SLG

Case 3:23-cv-00058-SLG   Document 46-2   Filed 03/24/23   Page 4 of 14

The Chamber has a specific interest in advancement of the Willow Project. The Chamber has been a steadfast proponent of the Willow Project since it was announced in January 2017, and specifically advocated for Supplemental Environmental Impact Statement ("SEIS") "Alternative E," which was ultimately adopted by the Bureau of Land Management ("BLM"). The Chamber determined that Alternative E was the most responsible and reasonable approach for all stakeholders, in part because out of all potential Alternatives, Alternative E is expected to produce the lowest amount of greenhouse gas emissions.

**Alaska Miners Association:** The Alaska Miners Association ("AMA") is a professional membership trade organization established in 1939 to represent the mining industry in Alaska. AMA's more than 1,400 members come from eight statewide branches: Anchorage, Denali, Fairbanks, Haines, Juneau, Kenai, Ketchikan/Prince of Wales, and Nome. Alaska's miners are individual prospectors, geologists, engineers, suction dredge miners, small family mines, junior mining companies, major mining companies, Alaska Native Corporations, and the contracting sector that supports Alaska's mining industry.

**Associated General Contractors of Alaska:** Associated General Contractors of Alaska ("AGC") is the construction industry's largest professional trade association, representing over 620 Alaskan contractors, specialty contractors, suppliers, manufacturers, and businesses in Alaska. AGC members abide by the best practices in the industry and take pride in their work to support vital infrastructure and connect Alaska. AGC does not represent any specific resource industry. It instead advocates for a healthy economy,

BRIEF OF *AMICI CURIAE* ALASKA BUSINESS, UNION, AND TRADE GROUPS　　　　　PAGE 2 OF 11
*SOVEREIGN INUPIAT FOR A LIVING ARCTIC, ET AL.* V. *BLM, ET AL.*　　　　　CASE NO. 3:23-cv-00058-SLG

Case 3:23-cv-00058-SLG   Document 46-2   Filed 03/24/23   Page 5 of 14

responsible environmental/developmental partnerships, and proper, legal, and well-established permitting and review process.

**Alaska Oil and Gas Association:** The Alaska Oil and Gas Association is a professional trade association whose mission is to foster the long-term viability of the oil and gas industry in Alaska for the benefit of all Alaskans.

**Alaska AFL-CIO:** The Alaska AFL-CIO ("AFL-CIO"), established in 1943, is the state's largest labor organization, representing 50,000 union members belonging to over 50 affiliated unions statewide. The AFL-CIO also strives to represent the interests of workers not represented by unions.

**Alaska Trucking Association:** The Alaska Trucking Association has served the needs of the Alaska trucking community for 60 years; becoming an advocate for the transportation industry before Alaska even became a state. Eugene Rogge led the way for the industry starting back in 1958 with its mission: to foster and promote the interests of the trucking industry in Alaska.

**Alaska Policy Forum:** Alaska Policy Forum is a nonpartisan, nonprofit organization dedicated to empowering and educating Alaskans and policymakers by promoting policies that maximize individual opportunities and grow freedom for all.

**Alaska Support Industry Alliance:** The Alaska Support Industry Alliance ("Alliance") promotes responsible exploration, development, and production of oil, gas, and mineral resources for the benefit of all Alaskans. It represents more than 500 businesses who provide support to the oil and gas and mining industries.

BRIEF OF *AMICI CURIAE* ALASKA BUSINESS, UNION, AND TRADE GROUPS  PAGE 3 OF 11
*SOVEREIGN INUPIAT FOR A LIVING ARCTIC, ET AL. V. BLM, ET AL.*  CASE NO. 3:23-CV-00058-SLG

Case 3:23-cv-00058-SLG   Document 46-2   Filed 03/24/23   Page 6 of 14

**Alaska District Council of Laborers:** The Alaska District Council of Laborers is a labor organization that serves as the exclusive bargaining representative for around 5,000 members in the oil and gas, healthcare, service, public, transportation, tourism, and construction sectors. Its members work on the frontlines, building and maintaining critical energy infrastructure, including projects from the North Slope to the Valdez Marine Terminal.

**Resource Development Council for Alaska, Inc.:** The Resource Development Council for Alaska, Inc. ("RDC") is an Alaskan trade association comprised of individuals and companies from Alaska's fishing, forestry, mining, oil and gas, and tourism industries. RDC's membership includes Alaska Native corporations, local communities, organized labor, and industry support firms. RDC's purpose is to encourage a strong, diversified private sector in Alaska and expand the state's economic base through the responsible development of our natural resources.

**Teamsters Local 959:** Teamsters Local 959 is the strongest private-sector Union in Alaska, providing outstanding Union services to over 5,000 members and their families.

**Alaska Bankers Association:** The Alaska Bankers Association is the voice of the State's banking industry committed to Alaska's success.

**Council of Alaska Producers:** The Council of Alaska Producers ("Council") is a trade association formed in 1992 to represent Alaska's large metal mines and advanced projects. The Council works to inspire Alaskans to realize a shared goal of sustainable

BRIEF OF *AMICI CURIAE* ALASKA BUSINESS, UNION, AND TRADE GROUPS     PAGE 4 OF 11
*SOVEREIGN INUPIAT FOR A LIVING ARCTIC, ET AL.* v. *BLM, ET AL.*     CASE NO. 3:23-cv-00058-SLG

Case 3:23-cv-00058-SLG   Document 46-2   Filed 03/24/23   Page 7 of 14

mineral production, providing economic and social benefits to our communities and the people of Alaska.

**ARGUMENT**

**I. THE PUBLIC INTEREST IN ADVANCEMENT OF THE WILLOW PROJECT WEIGHS DECISIVELY AGAINST AN INJUNCTION**

In deciding Plaintiffs' motion for preliminary injunction, the Court must determine whether an injunction is in the public interest[2]—an injunction here is firmly *not* in the public interest. "'The public interest inquiry primarily addresses impact *on non-parties rather than parties*,' and takes into consideration '*the public consequences* in employing the extraordinary remedy of injunction.'"[3] The public consequences—including the potential impact on non-parties such as *amici* here—of enjoining the Willow Project would be devastating.[4]

---

[2] *See, e.g.*, *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010) (citing *Winter v. Natural Res. Def. Council*, 555 U.S. 7 (2008)); *see also Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (noting that the balance of equities and public interest factors merge when the government is a party).

[3] *Macdonald v. Univ. of Alaska*, 2020 U.S. Dist. LEXIS 90125 at *17 (D. Alaska 2020) (emphasis added and alteration omitted) (quoting *HiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 1004 (9th Cir. 2019)); *see also Shell Offshore Inc. v. Greenpeace, Inc.*, 864 F. Supp. 2d 839, 853 (D. Alaska 2012) (the public interest analysis for the issuance of a preliminary injunction "requires us to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief") (quoting *Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 596 F.3d 1098, 1114-15 (9th Cir.2010)).

[4] *Cf. W. Watersheds Project v. Salazar*, 692 F.3d 921, 923 (9th Cir. 2012) ("In balancing the equities, the district court properly weighed the environmental harm posed by [a solar energy project] against the possible damage to project funding, jobs, and the state and national renewable energy goals that would result from an injunction halting project construction.").

BRIEF OF *AMICI CURIAE* ALASKA BUSINESS, UNION, AND TRADE GROUPS     PAGE 5 OF 11
*SOVEREIGN INUPIAT FOR A LIVING ARCTIC, ET AL. V. BLM, ET AL.*     CASE NO. 3:23-CV-00058-SLG

Case 3:23-cv-00058-SLG    Document 46-2    Filed 03/24/23    Page 8 of 14

The public interest in continuation of the Willow Project (and against an injunction) is reflected in widespread support amongst a broad majority of Alaskan stakeholders. Even temporary disruption of the Willow Project would threaten Alaska businesses, which are still trying to recover from economic damage done by the COVID-19 pandemic, by impeding job creation and responsible resource development, threatening enormous prospective revenues that would benefit the public, and jeopardizing energy and national security.

### A. The Public Interest Favoring the Willow Project is Reflected in Widespread Support Amongst a Majority of Stakeholders

The public interest in advancement of the Willow Project is evident from its far-reaching support amongst a vast majority of Alaskan stakeholders, including *amici*. On the day the Department of Interior ("DOI") approved the Willow Project, the Chamber, along with several other *amici* here—including the Alaska Trucking Association, the Resource Development Council for Alaska, the Alaska Oil & Gas Association, Associated General Contractors of Alaska, AFL-CIO of Alaska, the Alaska Petroleum Joint Crafts Council, and The Alliance—issued a joint statement celebrating DOI's decision.[5] In particular, the statement lauded the expected economic benefits of the Willow Project to the public, including: (1) 2,500 construction jobs, 75% of which will be union jobs; (2)

---

[5] Press Release, Alaska Chamber, Associated General Contractors of Alaska, AFL-CIO of Alaska, Alaska Oil & Gas Association, Alaska Support Industry Alliance, Alaska Trucking Association, Alaska Petroleum Joint Crafts Council, Resource Development Council, Alaska union and business organizations celebrate approval of Willow Project (Mar. 13, 2023), available at https://growthzonesitesprod.azureedge.net/wp-content/uploads/sites/1007/2023/03/Alaska-union-and-business-organizations-celebrate-approval-of-Willow-project-3_13_23.pdf.

BRIEF OF *AMICI CURIAE* ALASKA BUSINESS, UNION, AND TRADE GROUPS   PAGE 6 OF 11
*SOVEREIGN INUPIAT FOR A LIVING ARCTIC, ET AL. V. BLM, ET AL.*   CASE NO. 3:23-cv-00058-SLG

Case 3:23-cv-00058-SLG   Document 46-2   Filed 03/24/23   Page 9 of 14

300 long-term jobs; and (3) $8.7 billion in royalties and tax revenues to local, state, and federal governments.[6]

In light of these, and many other expected benefits, the Willow Project is also supported by: (1) every statewide-elected official in Alaska and the Alaska Legislature, which issued a joint resolution describing many facets of the public interest in advancement of the Willow Project[7]; (2) every governmental entity and Alaska Native Corporation affected by the Willow Project on the North Slope, including the North Slope Borough, Iñupiat Community of the Arctic Slope, the City of Wainwright, the City of Atqasuk, the City of Utqiaġvik, Arctic Slope Regional Corporation, and Kuukpik Corporation[8]; and (3)

---

[6] *Id.* Prior to the Willow Project's approval, the Chamber highlighted additional reasons why the Willow Project is in the public interest, in a letter to BLM. Letter from Kati Capozzi, President and CEO, Alaska Chamber to Steve Cohn, State Director, Bureau of Land Management (August 9, 2022) ("Capozzi Letter"), available at https://growthzonesitesprod.azureedge.net/wp-content/uploads/sites/1007/2022/08/Alaska-Chamber-Support-Letter-Willow-8-9-22.pdf. The Chamber explained that "[w]ith recent world events threatening the globe's energy supply, it is more important than ever we have a stable regulatory structure that allows for responsible development of our *own* oil and gas resources in the United States of America." *Id.* (emphasis in original). In addition, "[m]oving forward with the Willow Project would ensure social equity and environmental justice as we watch and continue to rely [for energy needs] on countries with far fewer environmental regulations and clear disregard for law, order, and social justice." *Id.*

[7] H.J. Res. No. 6, 33rd Leg. (Alaska 2023); *see, e.g.*, *id.* at 3:13-27 (concluding, among many other things, that "oil and gas development in the [NPRA] would strengthen national security and provide long-lasting benefits to the national economy by creating thousands of jobs nationwide, generating billions of dollars in government revenue, providing affordable energy to American consumers, and decreasing dependence on foreign energy," and that "resource development in the state has benefited rural communities by bringing family-supporting jobs and wages, increased educational opportunities, safe water and wastewater facilities, and expanded health care services to those communities").

[8] *See id.* at 2:29-31, 3:1-2.

BRIEF OF *AMICI CURIAE* ALASKA BUSINESS, UNION, AND TRADE GROUPS　　　　PAGE 7 OF 11
*SOVEREIGN INUPIAT FOR A LIVING ARCTIC, ET AL. V. BLM, ET AL.*　　　　CASE NO. 3:23-cv-00058-SLG

Case 3:23-cv-00058-SLG   Document 46-2   Filed 03/24/23   Page 10 of 14

prominent Alaska Native organizations, including the Alaska Federation of Natives, the Alaska Native Village Corporation Association, and the ANCSA Regional Association.[9]

The support of this large majority of Alaska stakeholders is plainly reflective of the widespread public interest in uninterrupted continuation of the Willow Project.

### B. An Injunction Would Harm the Public Interest in Job Creation, Responsible Resource Development, and Attendant Revenues

An injunction would undermine the public interest—shared by *amici*—in new jobs,[10] responsible resource development,[11] and increased revenues[12] to state and local governments from the Willow Project. The Willow Project is expected to create 2,500 new construction jobs and 300 new long-term jobs. An injunction would therefore stunt the public interest in job creation, an interest that is especially important to the Chamber and all *amici* here.

An injunction would also harm the public interest in responsible resource development, which the Chamber in particular has long prioritized.[13] The Alaska

---

[9] *Id.*

[10] *Cf. Signal Hill Serv. v. Macquarie Bank, Ltd.*, 2011 U.S. Dist. LEXIS 165858, at *56-58 (C.D. Cal. June 29, 2011) (observing that "preventing loss of jobs [is] a proper consideration in the public interest analysis") (internal quotation marks omitted).

[11] *Wyoming v. United States DOI*, 136 F. Supp. 3d 1317, 1351-52 (D. Wyo. 2015) ("the generation of revenue and employment from mineral development projects serves the public interest").

[12] *Id.*; *Pac. Rivers Council v. United States Forest Serv.*, 942 F. Supp. 2d 1014, 1033-34 (E.D. Cal. 2013) (noting that "[t]he economic health of communities and industries … is an important element of the public interest that must be considered in balancing the equities."); *W. Watersheds Project v. Salazar*, 2011 U.S. Dist. LEXIS 151556, at *67-68 (C.D. Cal. Aug. 10, 2011) (considering the "substantial socioeconomic impact upon hundreds of workers[.]").

[13] *See* ALASKA CHAMBER, 2023 ALASKA CHAMBER PRIORITIES AND POSITIONS, at 2 (2023), available at https://growthzonesitesprod.azureedge.net/wp-content/uploads/sites/1007/2022/

BRIEF OF *AMICI CURIAE* ALASKA BUSINESS, UNION, AND TRADE GROUPS  PAGE 8 OF 11
*SOVEREIGN INUPIAT FOR A LIVING ARCTIC, ET AL.* V. *BLM, ET AL.*  CASE NO. 3:23-cv-00058-SLG

Case 3:23-cv-00058-SLG   Document 46-2   Filed 03/24/23   Page 11 of 14

Legislature has concluded that responsible resource development "benefit[s] rural communities by bringing family-supporting jobs and wages, increased educational opportunities, safe water and wastewater facilities, and expanded health care services to those communities[.]"[14] The Chamber has separately noted that, out of all the Alternatives offered by BLM, Alternative E "reduces [the] scope, footprint, and impact of the project," and "is also expected to produce the lowest amount of greenhouse gas emissions."[15] An injunction would therefore undermine environmentally-conscious resource development to the detriment of Alaska's rural communities and businesses alike.

An injunction would similarly undermine the public interest in increased revenues. The Willow Project is expected to produce $8.7 billion is revenues to federal, state, and local governments.[16] Further delay of these revenue streams would drastically impede Alaska's recovery from the economic effects of the COVID-19 pandemic, which have had a profound impact on Alaska businesses in particular.

---

12/2023-Alaska-Chamber-Priorities-and-Positions53.pdf (One of the Chamber's leading priorities is the "responsible development" of resources "in Alaska's federal areas," including the NPRA).

[14] H.J. Res. No. 6 at 3:21-23.

[15] Capozzi Letter at 2.

[16] This estimate includes $3.9 billion in federal royalties, income tax, and gravel sales, $2.3 billion in NPRA Impact Mitigation grant funds returned to the State of Alaska, $1.3 billion in revenue to the State of Alaska from production, property, and income taxes, and $1.2 billion in revenue to the North Slope Borough from property taxes. CONOCOPHILLIPS, WILLOW FACT SHEET, at 2 (January 2023), available at https://static.conocophillips.com/files/resources/23copa013-willow-fact-sheet-v5-final.pdf.

BRIEF OF *AMICI CURIAE* ALASKA BUSINESS, UNION, AND TRADE GROUPS　　PAGE 9 OF 11
*SOVEREIGN INUPIAT FOR A LIVING ARCTIC, ET AL.* V. *BLM, ET AL.*　　CASE NO. 3:23-CV-00058-SLG

Case 3:23-cv-00058-SLG   Document 46-2   Filed 03/24/23   Page 12 of 14

### C. An Injunction Would Undermine the Public Interest in Energy Security

Finally, an injunction would disserve the public interest by undermining energy security. Continuation of the Willow Project, by contrast, would advance the public interest by reducing dependence on foreign energy sources, including countries with questionable environmental regulation.[17]

### CONCLUSION

For the foregoing reasons, an injunction is not in the public interest.

DATED at Anchorage, Alaska this 24th day of March, 2023.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys for *Amici Curiae* Alaska Business, Union, and Trade Groups

By: */s/ Matthew Singer*
Matthew Singer, AK Bar No. 9911072
Andrew P. March, AK Bar No. 2201003
420 L Street, Suite 400
Anchorage, AK 99501
Telephone: (907) 339-7125
Facsimile: (503) 796-2900
Email: msinger@schwabe.com
amarch@schwabe.com

---

[17] *See* Capozzi Letter at 2.

BRIEF OF *AMICI CURIAE* ALASKA BUSINESS, UNION, AND TRADE GROUPS — PAGE 10 OF 11
*SOVEREIGN INUPIAT FOR A LIVING ARCTIC, ET AL. V. BLM, ET AL.* — CASE NO. 3:23-CV-00058-SLG

Case 3:23-cv-00058-SLG   Document 46-2   Filed 03/24/23   Page 13 of 14

CERTIFICATE OF SERVICE

I hereby certify on March 24, 2023, a true and correct copy of the foregoing documents was served via the Court's CM/ECF system electronically on the following counsel of record:

Bridget Earley Psarianos
Brook Brisson
Suzanne Bostrom
Trustees for Alaska
Bpsarianos@trustees.org
Bbrisson@trustees.org
Sbostrom@trustees.org

Paul A. Turcke
U.S. Attorney's Office
PaulTurcke@usdoj.gov

Rickey Doyle Turner, Jr.
United States Department of Justice
Rickey.Turner@usdoj.gov

Ryan P. Steen
Whitney A. Brown
Jason T. Morgan
Stoel Rives LLP
Ryan.Steen@stoel.com
Whitney.Brown@stoel.com
Jason.Morgan@stoel.com

Stacey M. Bosshardt
Eric B. Fjelstad
Perkins Coie LLP
Sbosshardt@perkinscoie.com
Efjelstad@perkinscoie.com

Tyson C. Kade
Charlene Koski
Van Ness Feldman LLP
Tck@vnf.com
Cbk@vnf.com

Brooks W. Chandler
Boyd, Chandler & Falconer, LLP
Bchandler@bcfaklaw.com

SCHWABE, WILLIAMSON & WYATT, P.C.

*/s/ Matthew Singer*

BRIEF OF *AMICI CURIAE* ALASKA BUSINESS, UNION, AND TRADE GROUPS — PAGE 11 OF 11
*SOVEREIGN INUPIAT FOR A LIVING ARCTIC, ET AL. V. BLM, ET AL.* — CASE NO. 3:23-CV-00058-SLG

Case 3:23-cv-00058-SLG   Document 46-2   Filed 03/24/23   Page 14 of 14