# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

SOVEREIGN IÑUPIAT FOR A LIVING ARCTIC, *et al.*,

        Plaintiffs,

        v.

BUREAU OF LAND MANAGEMENT, *et al.*,

        Defendants.

    and

CONOCOPHILLIPS ALASKA, INC., *et al.*,

        Intervenor-Defendants.

Case No. 3:23-cv-00058-SLG

---

CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,

        Plaintiffs,

        v.

BUREAU OF LAND MANAGEMENT, *et al.*,

        Defendants.

    and

CONOCOPHILLIPS ALASKA, INC., *et al.*,

        Intervenor-Defendants.

Case No. 3:23-cv-00061-SLG

## ORDER RE MOTIONS FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Before the Court are two motions filed in related cases challenging the Bureau of Land Management's ("BLM") review and approval of ConocoPhillips Alaska, Inc.'s ("ConocoPhillips") Willow Master Development Plan ("Willow Project" or "Project") in the National Petroleum Reserve in Alaska ("NPR-A" or "Reserve"). At issue are Center for Biological Diversity Plaintiffs' ("CBD Plaintiffs")[1] Motion for Preliminary Injunction (Docket 24) and Sovereign Iñupiat for a Living Arctic Plaintiffs' ("SILA Plaintiffs")[2] Motion for Temporary Restraining Order and Preliminary Injunction (Docket 23). Both motions seek to enjoin ConocoPhillips from undertaking Willow Project construction activities this winter, pending the Court's final judgment on the merits of Plaintiffs' claims against Federal Defendants.[3] Oral argument was not requested and was not necessary to the

---

[1] CBD Plaintiffs are Center for Biological Diversity, Defenders of Wildlife, Friends of the Earth, Greenpeace, Inc., and Natural Resources Defense Council, Inc. Case No. 3:23-cv-00061-SLG.

[2] SILA Plaintiffs are Sovereign Iñupiat for a Living Arctic, Alaska Wilderness League, Environment America, Northern Alaska Environmental Center, Sierra Club, and The Wilderness Society. Case No. 3:23-cv-00058-SLG.

[3] In Case No. 3:23-cv-00058-SLG, Federal Defendants are the United States Bureau of Land Management ("BLM"); United States Fish and Wildlife Service ("FWS"); and United States Department of the Interior ("Interior Department"). In Case No. 3:23-cv-00061-SLG, Federal Defendants are the same with the addition of National Marine Fisheries Service; United States Department of Commerce; Deb Haaland, in her official capacity as Secretary of the Interior; Tommy P. Beaudreau, in his official capacity as Deputy Secretary of the Interior; Gina M. Raimondo, in her official capacity as Secretary of Commerce; Steven Cohn, in his official capacity as Alaska State Director of Bureau of Land Management; Sara Boario, in her official capacity as Regional Director of United States Fish and Wildlife Service; and Jonathan Kurland,

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 2 of 44

Case 3:23-cv-00058-SLG   Document 74   Filed 04/03/23   Page 2 of 44

Court's determination.  For the reasons set forth below, Plaintiffs' motions will be denied.

## INTRODUCTION

### I.    Background

The National Petroleum Reserve in Alaska ("NPR-A" or "Reserve"), on Alaska's North Slope, consists of 23.6 million acres and is the nation's largest single unit of public land.[4]  Established as the Naval Petroleum Reserve Number 4 in 1923, the NPR-A was renamed and its management authority was transferred to the Secretary of the Interior in 1976 by the Naval Petroleum Reserves Production Act ("NPRPA"), 42 U.S.C. § 6501 *et seq.*[5]  In 1980, the NPRPA was amended by an appropriations rider that directed the Secretary of the Interior to conduct "an expeditious program of competitive leasing of oil and gas in the" NPR-

---

in his official capacity as Regional Administrator of National Marine Fisheries Service. ConocoPhillips Alaska, Inc., Arctic Slope Regional Corporation, North Slope Borough, Kuukpik Corporation, and the State of Alaska were admitted as intervenor-defendants in both cases.  An amicus brief was filed by United States Senator Lisa Murkowski, Senator Dan Sullivan, Representative Mary Sattler Peltola, and the Alaska State Legislature.  Another amicus brief was filed by Alaska Business, Union, and Trade Groups.  *See* Dockets 9, 27, 37, 39, 45, 59, 60 (Case No. 3:23-cv-00058-SLG).

[4] *N. Alaska Env't Ctr. v. Kempthorne*, 457 F.3d 969, 973 (9th Cir. 2006).

[5] U.S. Dep't of the Interior, Bureau of Land Mgmt., DOI-BLM-AK-0000-2018-0004-EIS, *Willow Master Development Plan Supplemental Environmental Impact Statement – Final* 2 (2023), https://eplanning.blm.gov/public_projects/109410/200258032/20073121/250079303/Willow%20 FSEIS_Vol%201_Ch%201-Ch%205.pdf (hereinafter "Final SEIS").  Final SEIS page numbers cited to in this order refer to the given page number in the Final SEIS, not the page number of the entire document.

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 3 of 44

A.[6]     Over the years, Intervenor-Defendant ConocoPhillips has acquired and developed significant lease holdings in the northeast portion of the NPR-A.[7]

On May 10, 2018, ConocoPhillips requested that BLM prepare an Environmental Impact Statement ("EIS") for the Willow Project, as required by the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. § 4321 *et seq.*[8] The following year, BLM made available for public comment a Draft EIS for the Project.[9]  Then, on March 26, 2020, BLM released a Supplemental Draft EIS that evaluated additional Project components.[10]  BLM published its notice regarding the availability of the Final EIS ("FEIS") on August 14, 2020.[11]  On October 26, 2020, then-Secretary of the Interior David Bernhardt signed the Record of Decision ("ROD") adopting ConocoPhillips' proposed five drill site project, although BLM approved three drill sites and deferred decisions on the other two drill sites.[12]

---

[6] Pub. L. No. 96-514, 94 Stat. 2957 (1980) (codified at 42 U.S.C. § 6506a).

[7] Docket 5 at 2–7 (Case No. 3:23-cv-00058-SLG) (ConocoPhillips Mot. Intervene).

[8] 84 Fed. Reg. 45801, 45801 (Aug. 30, 2019).

[9] 84 Fed. Reg. at 45801.

[10] 85 Fed. Reg. 17094 (Mar. 26, 2020) ("This targeted Supplement to the Draft EIS only addresses additional analysis for three Project components added by the Project proponent: Module [D]elivery Option 3, a constructed freshwater reservoir, and up to three boat ramps for subsistence access.").

[11] 85 Fed. Reg. 49677 (Aug. 14, 2020).

[12] Docket 24-6 at 1–3 (Case No. 3:23-cv-00061-SLG) (Willow Master Development Plan Record of Decision 2020); Docket 23-13 at 11 (Case No. 3:23-cv-00058-SLG) (Willow Master Development Plan Record of Decision 2023).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 4 of 44

Case 3:23-cv-00058-SLG   Document 74   Filed 04/03/23   Page 4 of 44

In late 2020, a number of plaintiffs filed suit challenging the Federal Defendants' compliance with NEPA and the Endangered Species Act ("ESA") in reviewing and approving the FEIS and ROD for the Willow Project.[13]  The plaintiffs sought to preliminarily enjoin ConocoPhillips from undertaking certain construction activities for the Willow Project in the winter of 2020–2021.  The Court denied that motion on February 1, 2021, after concluding that the "[p]laintiffs' NEPA claims [we]re quite likely time-barred."[14]  With respect to the ESA claim, the Court explained that plaintiffs did not demonstrate that irreparable injury to the polar bears was likely in the absence of an injunction enjoining the winter construction activities.[15]

The plaintiffs appealed and simultaneously sought an injunction pending appeal.  This Court issued a temporary injunction enjoining certain construction activities for up to two weeks.[16]  The Court acknowledged that whether the NEPA claims were time-barred was a question of first impression and if they were not

---

[13] *Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.*, 516 F. Supp. 3d 943, 948 (D. Alaska 2021).  Plaintiffs in that case are nearly identical to those in this case: Center for Biological Diversity, Friends of the Earth, Greenpeace, Inc. (Case No. 3:20-cv-00308-SLG), and Sovereign Iñupiat for a Living Arctic, Alaska Wilderness League, Defenders of Wildlife, Northern Alaska Environmental Center, Sierra Club, and The Wilderness Society (Case No. 3:20-cv-00290-SLG).

[14] *Id.* at 955.

[15] *Id.* at 957.

[16] *Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.*, Case No. 3:20-cv-00290-SLG, Case No. 3:20-cv-00308-SLG, 2021 WL 454280 (D. Alaska Feb. 6, 2021).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 5 of 44

time-barred, they would likely succeed on the merits of the NEPA claims.[17]  The Court also held that the blasting planned as part of the winter construction activities would cause irreparable injury to at least one of the plaintiffs' members.[18]  A motions panel of the Ninth Circuit granted the plaintiffs' emergency motions for an injunction pending appeal and extended this Court's temporary injunction for the duration of the appeal. [19]  The Ninth Circuit held that the plaintiffs had "raised a serious question" with respect to whether their NEPA claims were time-barred, and held that the other *Winter*[20] factors tipped in the plaintiffs' favor.[21]

In August 2021, the Court ruled on the merits and vacated BLM's approval of the Willow Project under NEPA and vacated the Fish and Wildlife Service's Biological Opinion ("BiOp"), granting in part the plaintiffs' motion for summary judgment.[22]  With respect to NEPA, the Court found that: (1) "BLM's exclusion of foreign greenhouse gas emissions in its alternatives analysis in the EIS was arbitrary and capricious"; (2) "BLM acted contrary to law insofar as it developed its

---

[17] *Id.* at *2.

[18] *Id.* at *3.

[19] *Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.*, No. 21-35085, No. 21-35095, 2021 WL 4228689 (9th Cir. Feb. 13, 2021).

[20] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008).

[21] *Sovereign Iñupiat for a Living Arctic*, 2021 WL 4228689, at *1–2.

[22] *Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.*, 555 F. Supp. 3d 739, 805 (D. Alaska 2021).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 6 of 44

Case 3:23-cv-00058-SLG   Document 74   Filed 04/03/23   Page 6 of 44

alternatives analysis based on the view that ConocoPhillips had the right to extract all possible oil and gas from its leases"; and (3) "BLM acted contrary to law in its alternative[s] analysis for the Teshekpuk Lake Special Area insofar as it failed to consider the statutory directive that it give 'maximum protection' to surface values in that area."[23]  With respect to the BiOp, the "incidental take statement [wa]s not in accordance with the law because it lack[ed] the requisite specificity of mitigation measures for the polar bear."[24]

Following the Court's decision, BLM began preparing a Supplemental Environmental Impact Statement ("SEIS") for the Willow Project "to address deficiencies identified by [the Court]."[25]  On July 25, 2022, BLM made available for public comment a Draft SEIS.[26]  BLM published the notice of availability of the Final SEIS in the Federal Register on February 6, 2023.[27]  On March 12, 2023, Deputy Secretary of the Interior Tommy Beaudreau signed the Record of Decision approving the Willow Project.[28]

---

[23] *Id.* at 805.

[24] *Id.*

[25] 87 Fed. Reg. 44148, 44148 (July 25, 2022).

[26] 87 Fed. Reg. at 44148.

[27] 88 Fed. Reg. 7756 (Feb. 6, 2023).

[28] Docket 23-13 at 37 (Case No. 3:23-cv-00058-SLG).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 7 of 44

Case 3:23-cv-00058-SLG   Document 74   Filed 04/03/23   Page 7 of 44

## II. The Willow Project and Winter 2023 Construction Activities

As approved by the ROD, the Willow Project would consist of three drill sites and related support infrastructure, including a processing facility, airstrip, operations center, gravel mine, gravel roads connecting the Project infrastructure, and pipelines.[29]  The ROD disapproved of two additional drill sites that had been proposed by ConocoPhillips, explaining that this decision "significantly reduces the footprint of project infrastructure and the level of construction and operational activities, both within and outside of the sensitive [Teshekpuk Lake Special Area], and thereby substantially reduces impacts to a broad range of surface resources."[30]  Four days after BLM issued the ROD, ConocoPhillips relinquished 68,085.50 acres of leased lands in the Reserve because BLM "did not approve drilling pads that could have developed [these] leases."[31]

On March 13, 2023, the Department of the Interior issued a Right-of-Way Grant to ConocoPhillips approving its request to begin developing the Willow Project.[32]  ConocoPhillips began ice road construction that same day and, unless

---

[29] Docket 23-13 at 13 (Case No. 3:23-cv-00058-SLG).

[30] Docket 23-13 at 21 (Case No. 3:23-cv-00058-SLG).

[31] Docket 48-10 at 23 (Case No. 3:23-cv-00058-SLG).

[32] Docket 22-3 at 1–5 (Case No. 3:23-cv-00058-SLG).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 8 of 44

enjoined, plans to commence ground-disturbing activity on April 4, 2023,[33] and continue construction until approximately April 25, 2023, depending on the weather ("Winter 2023 Construction Activities").[34] The Winter 2023 Construction Activities are comprised of five components: (1) ice road and pad construction, (2) opening a gravel mine site, (3) constructing a gravel road that will provide access to the Willow Project area, (4) constructing a subsistence boat ramp on the Tiŋmiaqsiuġvik River, and (5) gravel work in the Kuparuk River Unit.[35] Both CBD Plaintiffs and SILA Plaintiffs seek to enjoin the Winter 2023 Construction Activities pending adjudication on the merits of their claims.

The new gravel mine site that ConocoPhillips plans to open this winter is located in the Tiŋmiaqsiuġvik area, which is approximately four to five miles southeast of Greater Mooses Tooth 1 ("GMT-1") and seven miles west of the community of Nuiqsut.[36] Nuiqsut is home to approximately 500 residents and is predominately Iñupiat.[37] The entire community of Nuiqsut relies on subsistence

---

[33] On March 16, 2023, ConocoPhillips "stipulate[d] that it will not commence surface-disturbing construction activities at the mine until April 4, 2023 (unless the Court issues a decision denying Plaintiffs' motions before that date)." Docket 23 at 3, ¶ 7 (Case No. 3:23-cv-00061-SLG) (Stipulated Mot. Expedite & Set Schedule for Prelim. Inj.).

[34] Docket 48-11 at 8, ¶ 12, 12, ¶ 18 (Case No. 3:23-cv-00058-SLG).

[35] Docket 48-11 at 8, ¶ 12, 4, ¶ 5 (Case No. 3:23-cv-00058-SLG).

[36] Docket 23-13 at 13; Docket 48-11 at 5–6, ¶ 7 (Case No. 3:23-cv-00058-SLG).

[37] Final SEIS at 368.

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 9 of 44

Case 3:23-cv-00058-SLG   Document 74   Filed 04/03/23   Page 9 of 44

resources, with each household harvesting an annual average of 679 pounds of subsistence resources.[38]

The proposed gravel mine would be located within 553 feet of the Tiŋmiaqsiuġvik river.[39] ConocoPhillips explains that "the mine site areas are set back from the river . . . to protect the rivers and fish" and "berms will be built around the mine site areas to keep mining sediments contained within the footprint of the mine areas." ConocoPhillips expects that any water flow leaving the mine will not impact water quality.[40] According to the Final SEIS, when completed, the gravel mine site area excavation footprint will be up to 115 total acres.[41] In the current construction season, however, ConocoPhillips only plans to create disturbance at the Willow Mine Site of up to 10.4 acres of land.[42] The Winter 2023 Construction Activities at the mine will require the use of "heavy equipment to remove the top organics layer, and blasting to loosen the frozen overburden and gravel," which will then be "loaded and transported with heavy equipment."[43] Blasting will

---

[38] Final SEIS at 304-05.

[39] Final SEIS at 177.

[40] Docket 48-11 at 10, ¶ 14 (Case No. 3:23-cv-00058-SLG).

[41] Final SEIS at 20.

[42] Docket 48-11 at 8–9, ¶ 13 (Case No. 3:23-cv-00058-SLG).

[43] Docket 48-11 at 6–7, ¶ 9 (Case No. 3:23-cv-00058-SLG).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 10 of 44

Case 3:23-cv-00058-SLG   Document 74   Filed 04/03/23   Page 10 of 44

normally be limited to one time per day and further limited to the hours of 10 a.m. to 8 p.m. with notice given to the residents of Nuiqsut prior to blasting.[44]  The mine site is "outside of the direction of the prevailing wind, which is expected to significantly reduce or eliminate sound and vibration in Nuiqsut."[45]  There will not be any activity at the mine site outside of the winter construction season, which is planned to occur over five to seven winter construction seasons.[46]

During this winter's remaining construction season, ConocoPhillips also plans to construct up to 3.1 miles of a gravel road, which will begin at the existing Greater Mooses Tooth 2 ("GMT-2") drill site, located approximately 15 miles west of Nuiqsut.[47]  Laying gravel will require the use of dump trucks to haul the gravel and dozers to shape the gravel.[48]  On April 4, 2023, ConocoPhillips plans to commence surface-disturbing activities on up to 28.1 acres of land for the road extension and the Tiŋmiaqsiuġvik River boat launch.[49]

---

[44] Docket 48-11 at 7, ¶ 9 (Case No. 3:23-cv-00058-SLG).

[45] Docket 48-11 at 7, ¶ 10 (Case No. 3:23-cv-00058-SLG).

[46] Final SEIS at 20.

[47] The road is planned to connect GMT-2 to the Willow Operations Center and Willow Central Facility.  Docket 48-11 at 7–8, ¶ 11 (Case No. 3:23-cv-00058-SLG).

[48] Docket 48-11 at 8, ¶ 11 (Case No. 3:23-cv-00058-SLG).

[49] Docket 48-11 at 8–9, ¶ 13 (Case No. 3:23-cv-00058-SLG).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 11 of 44

### III.    Plaintiffs' Claims

SILA Plaintiffs filed their case on March 14, 2023, and their motion for preliminary injunctive relief on March 16, 2023.[50] In their motion, SILA Plaintiffs assert that they are likely to succeed on their claim that Federal Defendants "violated NEPA and the NPRPA by failing to consider a reasonable range of alternatives and arbitrarily limiting its authority."[51] SILA Plaintiffs also bring a claim pursuant to Section 810 of the Alaska National Interest Lands Conservation Act ("ANILCA"), 16 U.S.C. § 3120, arguing that Federal Defendants failed to consider alternatives that would reduce impacts to subsistence uses.[52]

CBD Plaintiffs initiated their case on March 15, 2023, and filed their motion for preliminary injunctive relief on March 16, 2023.[53] As relevant here, CBD Plaintiffs assert they are likely to succeed on two claims: First, CBD Plaintiffs contend that Federal Defendants failed to meaningfully consider "reasonable alternatives that would have minimized the Project's adverse effects on climate

---

[50] *See* Docket 1 (Case No. 3:23-cv-00058-SLG) (Compl.); Docket 23 (Case No. 3:23-cv-00058-SLG) (Mot. TRO & Prelim. Inj.).

[51] Docket 23-1 at 8 (Case No. 3:23-cv-00058-SLG); *see also* Docket 1 at 55–58, ¶¶ 164–174 (Case No. 3:23-cv-00058-SLG).

[52] Docket 23-1 at 16 (Case No. 3:23-cv-00058-SLG); *see also* Docket 1 at 58–59, ¶¶ 174–180 (Case No. 3:23-cv-00058-SLG).

[53] *See* Docket 1 (Case No. 3:23-cv-00061-SLG) (Compl.); Docket 24 (Case No. 3:23-cv-00061-SLG) (Mot. Prelim. Inj.).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 12 of 44

and special areas within the Reserve," as required by NEPA and the NPRPA.[54] Second, CBD Plaintiffs assert that Federal Defendants violated NEPA by failing to properly analyze downstream global greenhouse gas emissions from future oil development on lands adjacent to Willow for which they assert Willow will serve as a catalyst.[55]

Both SILA Plaintiffs and CBD Plaintiffs seek an expedited order enjoining all construction activity for the Willow Project, including the Winter 2023 Construction Activities, until the merits in this case are resolved.[56]

## JURISDICTION

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which "confer[s] jurisdiction on federal courts to review agency action, regardless of whether the [Administrative Procedure Act] of its own force may serve as a jurisdictional predicate."[57]

---

[54] Docket 24 at 9, 13-14 (Case No. 3:23-cv-00061-SLG); *see also* Docket 1 at 43–45, ¶¶ 169–178 (Case No. 3:23-cv-00061-SLG).

[55] Docket 24 at 16 (Case No. 3:23-cv-00061-SLG); *see also* Docket 1 at 45–47, ¶¶ 179–188 (Case No. 3:23-cv-00061-SLG).

[56] The Court issued two orders acknowledging the parties' joint request for a ruling on the preliminary injunction motions not later than April 3, 2023, and stating that the Court will endeavor to accommodate that request. Docket 32 at 2 (Case No. 3:23-cv-00058-SLG); Docket 36 at 2 (Case No. 3:23-cv-00061-SLG).

[57] *Califano v. Sanders*, 430 U.S. 99, 105 (1977).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 13 of 44

## LEGAL STANDARD

In *Winter v. Natural Resources Defense Council, Inc.*, the United States Supreme Court held that plaintiffs seeking preliminary injunctive relief must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest.[58] When, as here, the government is a party to the action, the balance of equities factor and the public interest factor merge.[59] The Supreme Court in *Winter* characterized "injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."[60]

Following *Winter*, the Ninth Circuit addressed the first element—the likelihood of success on the merits—and held that its "serious questions" approach to preliminary injunctions was still valid "when applied as a part of the four-element *Winter* test."[61] Under that approach, if a plaintiff shows "that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the

---

[58] 555 U.S. at 20. The standard for obtaining a temporary restraining order is "substantially identical" to that for a preliminary injunction, so the Court considers them together. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

[59] *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

[60] *Winter*, 555 U.S. at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).

[61] *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 14 of 44

merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor.'[62]  "Serious questions are 'substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.'"[63]  They "need not promise a certainty of success, nor even present a probability of success, but must involve a 'fair chance on the merits.'"[64]  All four *Winter* elements must still be satisfied under this approach,[65] but the last two elements—the balance of hardships and consideration of the public interest—merge when the government is a party to the action.[66]

Injunctive relief is an equitable remedy, and "[t]he essence of equity jurisdiction is the power of the court to fashion a remedy depending upon the necessities of the particular case."[67]

---

[62] *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (emphasis in original) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

[63] *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991) (quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)); *see also Fyock v. City of Sunnyvale*, 25 F. Supp. 3d 1267, 1273 (N.D. Cal. 2014) ("'Serious questions' refers to questions 'which cannot be resolved one way or the other at the hearing on the injunction and as to which the court perceives a need to preserve the status quo . . . .'" (quoting *Gilder*, 936 F.2d at 422)).

[64] *Gilder*, 936 F.2d at 422 (quoting *Marcos*, 862 F.2d at 1362).

[65] *All. for the Wild Rockies*, 632 F.3d at 1135 ("Of course, plaintiffs must also satisfy the other *Winter* factors."); *see also, e.g.*, *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013) (describing standard for preliminary injunction).

[66] *Nken v. Holder*, 556 U.S. 418, 435 (2009).

[67] *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1022 (9th Cir. 2009) (quoting *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 175 (9th Cir. 1987)).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 15 of 44

Case 3:23-cv-00058-SLG   Document 74   Filed 04/03/23   Page 15 of 44

**DISCUSSION**

Upon consideration of the parties' briefing and the record in this case, the Court finds as follows:

## I. Likelihood of Irreparable Harm

The Court first considers whether Plaintiffs have demonstrated that they are likely to suffer irreparable harm in the absence of preliminary injunctive relief.[68]  A plaintiff "must demonstrate that in the absence of a preliminary injunction, 'the [plaintiff] is likely to suffer irreparable harm before a decision on the merits can be rendered.'"[69]  "A likelihood of irreparable harm means 'a likelihood of substantial and immediate irreparable injury.'"[70]  The Supreme Court has emphasized that "simply showing some 'possibility of irreparable injury'" is insufficient.[71]

---

[68] Plaintiffs urge the Court to follow the Ninth Circuit motions panel's order in the previous challenge to the Willow Project, which held that the plaintiffs would "suffer irreparable harm in the absence of an injunction." *Sovereign Iñupiat for a Living Arctic*, 2021 WL 4228689, at *2. Plaintiffs maintain that ConocoPhillips proposes construction activities this winter that are substantially similar to those considered by this Court and the Ninth Circuit in 2021.  However, the Ninth Circuit's order is unpublished and not precedent.  Ninth Cir. R. 36-3.  Moreover, the Court has received new arguments and declarations from all parties with respect to potential irreparable harm from the Winter 2023 Construction Activities that merit further consideration.

[69] *Winter*, 555 U.S. at 22 (quoting 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948.1 (2d ed. 1995)).

[70] *Medcursor Inc. v. Shenzen KLM Internet Trading Co.*, 543 F. Supp. 3d 866, 877 (C.D. Cal. 2021) (quoting *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 678 F.3d 1314, 1325 (Fed. Cir. 2012)). *See also City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) ("The equitable remedy [of injunction] is unavailable absent a showing of irreparable injury, . . . a 'likelihood of substantial and immediate irreparable injury.'" (quoting *O'Shea v. Littleton*, 414 U.S. 488, 501 (1974))).

[71] *Nken v. Holder*, 556 U.S. 418, 434–35 (2009) (quoting *Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir. 1998)).  As the Supreme Court has explained, "[i]ssuing a preliminary injunction based only

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 16 of 44

Case 3:23-cv-00058-SLG   Document 74   Filed 04/03/23   Page 16 of 44

"Speculative injury does not constitute irreparable injury . . . . [A] plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief."[72] Moreover, the injury must be irreparable.[73] And yet, "[t]he Supreme Court has instructed us that '[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e.*, irreparable.' Of course, this does not mean that 'any potential environmental injury' warrants an injunction."[74] Because preliminary injunctive relief is an equitable remedy, there is no presumption of irreparable harm, even in cases involving environmental impact.[75]

Furthermore, "[t]here must be a 'sufficient causal connection' between the alleged irreparable harm and the activity to be enjoined," such as a "showing that

---

on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22 (citing *Mazurek*, 520 U.S. at 972).

[72] *Caribbean Marine Servs. Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis omitted) (first citing *Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984); and then citing *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980)).

[73] *See L.A. Mem'l Coliseum Comm'n*, 634 F.2d at 1202 (holding that injury of lost revenues was not irreparable).

[74] *All. for the Wild Rockies*, 632 F.3d at 1135 (quoting *Lands Council v. MacNair*, 537 F.3d 981, 1004 (9th Cir. 2008)).

[75] *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 544-55 (1987) (holding that a presumption of irreparable damage "when an agency fails to evaluate thoroughly the environmental impact of a proposed action . . . is contrary to traditional equitable principles").

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 17 of 44

'the requested injunction would forestall' the irreparable harm."[76]  The movant, "*by a clear showing*, carries the burden of persuasion."[77]

As a preliminary matter, the current motions seek to enjoin the Winter 2023 Construction Activities.  For the remainder of this winter season, ConocoPhillips intends to open the gravel mine on the Tiŋmiaqsiuġvik River, construct up to 3.1 miles of a gravel road, and build a subsistence boat ramp on the Tiŋmiaqsiuġvik.[78]  The total surface disturbance from the Winter 2023 Construction Activities "will range from 10.4 acres to 38.5 acres," depending on how long the winter season lasts.[79]  Clearly, the planned Winter 2023 Construction Activities are substantially narrower in scope than the Willow Project as a whole.[80]  To obtain preliminary

---

[76] *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 819 (9th Cir. 2018) (quoting *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981–82 (9th Cir. 2011)).

[77] *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (emphasis in original) (quoting *Mazurek*, 520 U.S. at 972).

[78] Docket 48-11 at 4, ¶ 5, 7–8, ¶¶ 11–12 (Case No. 3:23-cv-00058-SLG).

[79] Docket 48-11 at 8–9, ¶ 13 (Case No. 3:23-cv-00058-SLG).

[80] *See Nw. Env't Def. Ctr. v. U.S. Army Corps of Eng'rs*, 817 F. Supp. 2d 1290, 1314–15 (D. Or. 2011) (explaining that courts must "evaluate the likelihood of irreparable harm in the context of specific and imminent proposals," so plaintiffs had to show clear evidence of irreparable harm from an extraction plan that was "much narrower in scope than generalized mining that may be authorized . . . in the future").

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 18 of 44

relief, Plaintiffs must demonstrate that these limited construction activities will result in irreparable harm before the Court makes a determination on the merits.[81]

Plaintiffs have filed numerous declarations from persons who are deeply concerned about the negative impacts from the extraction of oil and gas over the lifetime of the Willow Project, and in particular its impact on global climate change.[82] But regardless of the validity of these concerns, they are not relevant to the Court's consideration of the current motions because the planned Winter 2023 Construction Activities do not include the extraction of any oil and gas.

Some of Plaintiffs' declarants also express concerns about the noise associated with the proposed blasting activity that ConocoPhillips seeks to conduct in the remaining weeks of this winter. For example, Dr. Rosemary Ahtuangaruak, the Mayor of Nuiqsut, explains that the blasting from the Arctic Slope Regional Corporation ("ASRC") gravel mine "shook our houses, bodies, and minds; they rattled us at a very deep level" and even "cracked house windows and broke water

---

[81] *See Winter*, 555 U.S. at 23–24 (declining to review the merits where plaintiffs had not shown that their injury was outweighed by the public interest, explaining that "[a] proper consideration of these factors alone requires denial of the requested injunctive relief").

[82] *See generally* Docket 23-4; Docket 23-5; Docket 23-6; Docket 23-7; Docket 23-8; Docket 23-9; Docket 23-11 (Case No. 3:23-cv-00058-SLG); Docket 24-24; Docket 24-25; Docket 24-26; Docket 24-27; Docket 24-28; Docket 24-30; Docket 24-32 (Case No. 3:23-cv-00061-SLG).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 19 of 44

and sewer pipes."[83]   And yet, the noise and vibration from blasting, however disturbing, is short-lived; it is not permanent.  And the noise and vibration in Nuiqsut from the proposed Tiŋmiaqsiuġvik Mine Site would be considerably less than the noise from the ASRC Mine Site because the "Tiŋmiaqsiuġvik Mine Site would be [located] 7 miles from Nuiqsut, which is 4 miles farther from Nuiqsut than the ASRC Mine Site."[84]   BLM determined that blasting from the proposed mine site would "attenuate to 59 [decibels] in Nuiqsut, which is roughly the volume of conversational speech."[85]   And ConocoPhillips plans to conduct blasting approximately one time each day, at a specified time between the hours of 10 a.m. and 8 p.m., and only after notice is provided to Nuiqsut residents.[86]  Based on the foregoing, the Court finds that Plaintiffs have not established that the anticipated noise and vibration from blasting at the gravel mine site for the Winter 2023 Construction Activities constitutes an irreparable injury.

Sam Kunaknana, a resident of Nuiqsut, explains that the proposed gravel mine would be located near the Ublutuoch (Tiŋmiaqsiuġvik) River upstream of an

---

[83] Docket 24-23 at 26–23, ¶ 53 (Case No 3:23-cv-00061-SLG).  *See also* Docket 23-10 at 4–5 ¶ 10 ("I understand that Conoco plans to begin construction on that gravel mine in the winter, which will lead to blasting noise in our community, and disturbs both our community members and animals in the area.") (Case No. 3:23-cv-00058-SLG).

[84] Docket 48-25 at 19 (Case No. 3:23-cv-00058-SLG).

[85] Docket 48-25 at 19 (Case No. 3:23-cv-00058-SLG).

[86] Docket 48-11 at 7, ¶ 9 (Case No. 3:23-cv-00058-SLG).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 20 of 44

"important subsistence fishing area[]."[87]  He expresses concerns that the "mine will impact us and the health of the fish downstream."[88]  He fears that "the increase of pollutants in [the] streams" have caused the fish to grow "an unknown mold," and that the proposed gravel mining will cause similar impacts to subsistence uses.[89]  However, BLM's analysis of the impacts of the Winter 2023 Construction Activities on fish suggest that those impacts will be minimal.  For example, BLM explains that the closest overwintering habitat for fish is approximately three miles from the mining sites, so "fish would not be affected by blasting or gravel excavation."[90]  Moreover, the mine would be located 553 feet away from the river and "surface erosion between the mine pits and the stream" is "unlikely" to occur, so the gravel mine is not expected to cause permanent fish habitat loss or alteration.[91]  With respect to the mold infecting fish, BLM referenced a 2021 laboratory experiment investigating mold contamination and hypothesizing that "host susceptibility to infection may be the prominent factor contributing to an increase in [mold] infections . . . with environmental conditions [such as elevated temperature and

---

[87] Docket 23-10 at 3, ¶ 8 (Case No. 3:23-cv-00058-SLG).

[88] Docket 23-10 at 5, ¶ 10 (Case No. 3:23-cv-00058-SLG).

[89] Docket 23-10 at 5, ¶¶ 11–12 (Case No. 3:23-cv-00058-SLG).

[90] Final SEIS at 183.

[91] Final SEIS at 177.

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 21 of 44

Case 3:23-cv-00058-SLG   Document 74   Filed 04/03/23   Page 21 of 44

reduced salinity] playing a more secondary role."[92]  The Court acknowledges Mr. Kunaknana's concern for the potential of irreparable harm to the fish he relies on for subsistence from the Winter 2023 Construction Activities.  But his concern is not sufficient to establish that irreparable harm to the downriver fish resource is likely if Winter 2023 Construction Activities take place.[93]

The parties have submitted conflicting declarations from Nuiqsut residents with respect to the potential impact of Winter 2023 Construction Activities on subsistence hunters of caribou.  Mr. Kunaknana states that he "hunt[s] for caribou in the winter and [is] concerned about whether [he] will be able to continue doing

---

[92] Final SEIS at 167–68.  A court must defer to the agency's discretion "to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive."  *Lands Council v. McNair*, 537 F.3d 981, 1000 (9th Cir. 2008), *overruled in part on other grounds by Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) (quoting *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989)).  *See also Friends of the Wild Swan*, 767 F.3d at 946 (holding that plaintiffs did not establish a likelihood of irreparable harm to fisheries in the absence of an injunction where "[b]oth EAs indicate it is highly unlikely that the 'worst-case scenario' event (intense storm following prescribed burn) for either project would ever occur because of the seasonal timing of the burns, and thus it appears doubly unlikely that all potential sediment discharge from both projects would occur simultaneously"); *Earth Island Institute v. Carlton*, No. CIV. S-09-2020 FCD/EFB, 2009 WL 9084754, at *27 (E.D. Cal. Aug. 20, 2009) ("Defendants' experts' testimony seriously undermines the soundness of plaintiff's claims of likely irreparable harm such that the court cannot find that plaintiff has made the requisite showing under *Winter*.").

[93] *See Caribbean Marine Servs. Co.*, 844 F.2d at 675–76 (explaining that "[s]ubjective apprehensions and unsupported predictions" are "not sufficient to satisfy a plaintiff's burden of demonstrating an immediate threat of irreparable harm"); *Ness v. L. Enf't Support Agency*, Case No. C10-5111 KLS, 2012 WL 13176243, at *4 (W.D. Wash. Aug. 9, 2012) ("While worrying that something may happen can be difficult, it does not rise to the level of irreparable harm."); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) ("In other words, respondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.").

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 22 of 44

Case 3:23-cv-00058-SLG   Document 74   Filed 04/03/23   Page 22 of 44

that if there is road construction and blasting for the gravel mine now and in the future."[94]  By contrast, Thomas Napageak Jr., maintains that "[t]he gravel roads are a blessing for access to subsistence resources" because "[t]hey provide year-round access" to caribou hunting grounds, whereas "[t]raveling off road on the tundra can be dangerous as equipment can break down or hunters can get stuck and stranded."[95]  Curtis Ahvakana spends about six months of the year in Nuiqsut or at Alpine and he states that before the gravel roads were constructed for Alpine, it was "difficult . . . to keep your freezer stocked" because access to resources was limited and "[h]unting trips could take days, or even a week," but "[n]ow we can easily get to where the caribou are at, and I can fill my freezer in a day by hunting from the gravel roads."[96]  These competing narratives from subsistence hunters do not support a finding that there is a likelihood of irreparable harm to subsistence caribou hunters if the Winter 2023 Construction Activities proceed.

BLM acknowledges that the gravel mine site will affect caribou by (1) causing habitat loss and alteration and (2) disturbance or displacement from the noise and human activity.  And yet, with respect to habitat loss and alteration, the

---

[94] Docket 23-10 at 8, ¶ 16 (Case No. 3:23-cv-00058-SLG).

[95] Docket 48-6 at 3–4, ¶¶ 7, 9; *see also* Docket 48-3; Docket 48-4; Docket 48-5 (Case No. 3:23-cv-00058-SLG).

[96] Docket 48-5 at 2, ¶ 2, 3–4, ¶ 7 (Case No. 3:23-cv-00058-SLG).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 23 of 44

Winter 2023 Construction Activities will cause surface disruption on only a very small fraction of the NPR-A—0.00015 percent.[97]  Moreover, BLM suggests that habitat loss and alteration from gravel mining specifically will have a minimal effect on caribou "[b]ecause the habitats lost are not unique and occur throughout the analysis area . . . [so] caribou would likely move to similar habitats nearby."[98]  With respect to the disturbance or displacement of caribou, the Winter 2023 Construction Activities will only produce noise for approximately 21 days.[99]  BLM acknowledges that the noise associated with winter construction at the mine "could cause caribou to avoid the mine site or to act skittishly."  However, this will occur during winter months when "overall caribou hunting activity is low."[100]  Additionally, while the blasting will make the most noise, it is of "very short onset and duration."[101]  In sum, the record does not support a showing of irreparable harm to caribou from the Winter 2023 Construction Activities.

Plaintiffs have filed several declarations that they contend show that their members will suffer injury to their use and enjoyment of the land where the Winter

---

[97] Docket 48-11 at 9, ¶ 13 (Case No. 3:23-cv-00058-SLG).

[98] Final SEIS at 237.

[99] Docket 23-1 at 26 (Case No. 3:23-cv-00058-SLG).

[100] Final SEIS at 327.

[101] Final SEIS at 239.

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 24 of 44

Case 3:23-cv-00058-SLG   Document 74   Filed 04/03/23   Page 24 of 44

2023 Construction Activities are proposed to occur. The Supreme Court has recognized that "[a]esthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society."[102] However, in the context of the standing inquiry, the Court explained that "the 'injury in fact' test requires more than an injury to a cognizable interest"; it requires a showing that "the party seeking review be himself among the injured."[103] Similarly, in *Lujan v. Defenders of Wildlife*, the Supreme Court explained that the plaintiffs had not established standing when their members indicated that they had previously traveled from the United States to Egypt and Sri Lanka to visit the areas of the projects before the projects commenced and had an intent to return to these places.[104] The Supreme Court held that "[s]uch 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require."[105] Even more is required in the context of a preliminary injunction: "A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a

---

[102] *Sierra Club v. Morton*, 405 U.S. 727, 734 (1972).

[103] *Morton*, 405 U.S. at 734–35.

[104] 504 U.S. 555, 564 (1992).

[105] *Id.* (emphasis in the original).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 25 of 44

Case 3:23-cv-00058-SLG   Document 74   Filed 04/03/23   Page 25 of 44

prerequisite to preliminary injunctive relief."[106]  Thus, to show irreparable harm, Plaintiffs' declarations at a minimum must show that at least one or more of their members will be irreparably harmed if the Winter 2023 Construction Activities were to proceed.

Dr. Rosemary Ahtuangaruak, the Mayor of the City of Nuiqsut, expresses numerous concerns about the environmental impacts of gravel mining and the construction of gravel roads.[107]  As this Court observed in the prior challenge to the Willow Project, "there is a strong likelihood of irreparable environmental consequences once blasting operations commence."[108]  However, Dr. Ahtuangaruak has not shown how these environmental impacts would cause "substantial and immediate" irreparable harm to her.[109]  When the Court in 2021 temporary enjoined ConocoPhillips from breaking ground at the Tiŋmiaqsiuġvik Mine Site, the Court relied in large part on a declaration that Dr. Ahtuangaruak filed at that time stating that she would experience irreparable harm to her ability to "hunt caribou where the mine is going to be located."[110]  But in her current

---

[106] *Caribbean Marine Servs. Co.*, 844 F.2d at 674 (emphasis in the original).

[107] *See generally* Docket 24-23 (Case No. 3:23-cv-00061-SLG).

[108] *Sovereign Iñupiat for a Living Arctic*, 2021 WL 454280, at *4.

[109] *Lyons*, 461 U.S. at 111.

[110] *Sovereign Iñupiat for a Living Arctic*, 2021 WL 454280, at *3.

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 26 of 44

Case 3:23-cv-00058-SLG   Document 74   Filed 04/03/23   Page 26 of 44

declaration submitted for purposes of this motion, she explains that "it is no longer possible" to take her boat up the Tiŋmiaqsiuġvik River "because of a piling that was placed where the river enters Colville."[111]  And she has not demonstrated that if she were unable to hunt caribou at the proposed 10-acre mine site, it would impact her ability to obtain caribou for subsistence use.  She also explains that she uses and enjoys an unspecified area "near" the gravel site, which she describes as "beautiful" and "a place of wellness for [her]."  She adds that she has gone walking and berry-picking near the mine site as recently as the summer of 2022, but she does not specify how near to the proposed gravel site she traveled.[112]  To the extent that Dr. Ahtuangaruak avers that mining and the associated construction would interfere with her enjoyment of the area "near" the mine site, she has not shown that irreparable harm is likely.

Plaintiffs also filed Daniel Ritzman's declaration.  Mr. Ritzman resides in the state of New Mexico; he states that he has travelled to the NPR-A numerous times since 1996.[113]  In his declaration, he describes his plan to "return to the Utukok Uplands region in the summer of 2023 to guide a trip on the Ipnavik River and to do a personal float on the Colville."  He avers that if the gravel mine opens near

---

[111] Docket 24-23 at 26, ¶ 53 (Case No. 3:23-cv-00061-SLG).

[112] Docket 24-23 at 26, ¶ 53 (Case No. 3:23-cv-00061-SLG).

[113] Docket 23-6 at 3, ¶ 8, 10–13, ¶¶ 25–31 (Case No. 3:23-cv-00058-SLG).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 27 of 44

Case 3:23-cv-00058-SLG   Document 74   Filed 04/03/23   Page 27 of 44

the Tiŋmiaqsiuġvik River, "it would definitely harm [his] experience, and it would make [him] reconsider [his] plans."[114]  However, the Tiŋmiaqsiuġvik mine would be located many miles away from the Colville River and Ipnavik River where he plans his float trips.[115]  And even if Mr. Ritzman plans to travel on the Tiŋmiaqsiuġvik River, it is not at all clear that he would be able to see the mine from the river, as the mine would be over 500 feet away.[116]  Moreover, Mr. Ritzman will travel in the summer and the mining will only occur in the winter.  Mr. Ritzman's declaration does not clearly demonstrate that he will suffer irreparable harm absent an injunction of the Winter 2023 Construction Activities because his future travel plans in Alaska would not take him to the gravel mine site or the gravel road extension site.

Plaintiffs rely on the Ninth Circuit's opinion in *Alliance for the Wild Rockies v. Cottrell* for the proposition that harms like those averred by Dr. Ahtuangaruak and Mr. Ritzman, such as the "ability to 'view, experience, and utilize' . . . areas in their undisturbed state," nonetheless satisfy the likelihood of irreparable injury

---

[114] Docket 23-6 at 13–14, ¶¶ 32-33 (Case No. 3:23-cv-00058-SLG).

[115]  The Tiŋmiaqsiuġvik mine would be located several miles west of Nuiqsut, and the Colville River is several miles east of Nuiqsut.  Final SEIS Figure ES.2 (map).  The Ipnavik River is a tributary of the Colville River and is located even further from the proposed mine.

[116] Final SEIS at 177.

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 28 of 44

Case 3:23-cv-00058-SLG   Document 74   Filed 04/03/23   Page 28 of 44

requirement articulated in *Winter*.[117]  In *Alliance for the Wild Rockies*, the alleged injury would have prevented the plaintiffs' members from using and enjoying 1,652 acres of forest, which represented six percent of the acreage damaged by fire. The plaintiffs' members testified that they used that forest acreage "for work and recreational purposes, such as hunting, fishing, hiking, horseback riding, and cross-country skiing."  The Ninth Circuit described the members' loss of use and enjoyment of this area as "hardly a de minimus injury" and concluded that there was irreparable harm to the plaintiffs' members.[118]  In this case, by contrast, the Winter 2023 Construction Activities at the Tiŋmiaqsiuġvik Mine Site and other activities will cause surface disruption on up to 38.5 acres of a reserve spanning 23,229,653 acres.[119]  To be clear, the Willow Project in its entirety would have a large environmental impact, but the Court's consideration at this time is limited to the environmental consequences of approximately 21 days of construction at the end of the Winter 2023 Construction Season.[120]  Mr. Kunaknana, Dr. Ahtuangaruak, and Mr. Ritzman have each clearly articulated their deep appreciation and respect for the region, but none of them has demonstrated that

---

[117] *All. for the Wild Rockies*, 632 F.3d at 1135.

[118] *Id.*

[119] Docket 48-11 at 9, ¶ 13 (Case No. 3:23-cv-00058-SLG).

[120] Docket 22-1 at 5, ¶ 11 (Case No. 3:23-cv-00058-SLG).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 29 of 44

Case 3:23-cv-00058-SLG   Document 74   Filed 04/03/23   Page 29 of 44

they would be irreparably harmed if the Winter 2023 Construction Activities go forward.

CBD Plaintiffs further contend that the "irreparable harm to Plaintiffs" is "compounded by the fact that absent an injunction, on-the-ground activities threaten to set in motion a 'bureaucratic steam roller'" that may "skew a decision on remand toward development."[121] The Ninth Circuit has recognized that "[b]ureaucratic rationalization and bureaucratic momentum are real dangers," but nonetheless did not find these factors dispositive when deciding whether leases sold in violation of NEPA should be suspended or voided, explaining that the Circuit "assume[s] the Secretary will comply with the law."[122] The same is true here. In the event of a second remand to the agency, the Court assumes that BLM would comply with the law. While the Court recognizes that bureaucratic momentum is a real danger, such risk by itself does not establish a likelihood of irreparable harm in this case.

The Supreme Court has explained that injunctive relief is "an extraordinary remedy," so the party seeking relief will only prevail upon a clear showing that

---

[121] Docket 24 at 24 (Case No. 3:23-cv-00061-SLG) (quoting *Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F.3d 978, 995 (8th Cir. 2011)).

[122] *N. Cheyenne Tribe v. Hodel*, 851 F.2d 1152, 1157 (9th Cir. 1988).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 30 of 44

irreparable harm is likely, not a mere possibility.[123]   The Court concludes that Plaintiffs have not made the requisite showing that they would likely be irreparably harmed if the planned Winter 2023 Construction Activities proceed.

## II.   *Balance of the Equities and Public Interest*

Although the Court's finding on irreparable harm is sufficient of itself to warrant the denial of Plaintiffs' motions, the Court also addresses the balance of the equities and the public interest factors.[124]

The government is a party to this action, so the final two *Winter* factors—the balance of the equities factor and the public interest factor—merge.[125]   In "balanc[ing] the competing claims of injury," a court "must consider the effect on each party of the granting or withholding of the requested relief."[126]   Because environmental injury specifically "can seldom be adequately remedied by money damages and is often permanent or at least of long duration," the "balance of harms will usually favor the issuance of an injunction to protect the environment" if

---

[123] *Winter*, 555 U.S. at 22.

[124] *All. for the Wild Rockies*, 632 F.3d at 1135 (citing *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (explaining that *Winter* "requires the plaintiff to make a showing on all four prongs")).

[125] *Drakes Bay Oyster Co.*, 747 F.3d at 1092 (citing *Nken*, 556 U.S. at 435).

[126] *Amoco Prod. Co.*, 480 U.S. at 542.

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 31 of 44

"such injury is sufficiently likely."[127]  However, the law does not "allow us to abandon a balance of harms analysis just because a potential environmental injury is at issue,"[128] and "[e]conomic harm may indeed be a factor in considering the balance of equitable interests."[129]  An injunction "is a matter of equitable discretion," and "[t]he assignment of weight to particular harms is a matter for district courts to decide."[130]

Plaintiffs' motions require the Court to balance the environmental harms that would be caused if the Winter 2023 Construction Activities were allowed to proceed against the economic and other harms that would occur if those activities were precluded while the merits in this case are determined.  The Ninth Circuit's decision in *Earth Island Institute v. Carlton* sheds light on how these harms should be balanced.  In that case, the United States Forest Service sought to implement

---

[127] *Id.* at 545.

[128] *Lands Council*, 537 F.3d at 1005 (citing *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496 (9th Cir. 1995)).  *See W. Watersheds Project v. Salazar*, 692 F.3d 921, 923 (9th Cir. 2012) ("In balancing the equities, the district court properly weighed the environmental harm posed by [a solar energy] project against the possible damage to project funding, jobs, and the state and national renewable energy goals that would result from an injunction halting project construction, and concluded that the balance favored" denial of preliminary injunction that would have halted project construction.).

[129] *Earth Island Inst. v. Carlton*, 626 F.3d 462, 475 (9th Cir. 2010) (first citing *Amoco Prod. Co.*, 480 U.S. at 545; and then citing *Lands Council*, 537 F.3d at 1005 (holding that the district court did not clearly err in concluding that the balance of harms did not tip in environmental organization's favor where a Forest Service project would "further the public's interest in aiding the struggling local economy and preventing job loss")).

[130] *Id.* (citing *Winter*, 555 U.S. at 32).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 32 of 44

Case 3:23-cv-00058-SLG   Document 74   Filed 04/03/23   Page 32 of 44

a project to conduct post-wildfire logging in a national forest, "remove burned trees posing a safety hazard to road traffic within the project area," and "reestablish the forest through the planting of conifer seedlings."[131]  Plaintiffs sought a preliminary injunction, asserting that the project would unacceptably reduce a rare post-wildfire habitat for a species of woodpecker.[132]  The district found that plaintiffs "had, at most, showed . . . a possibility, but no likelihood of irreparable harm," and that the government's economic interest "in recovering the highest possible value of the timber and providing a boost to the local economy by creating jobs in the local logging industry[,] . . . in combination with the safety concerns and reforestation efforts, outweighed any harm to environmental interests."[133]  The district court also gave weight to the "Forest Service's determination that reforestation was in the public's interest," which plaintiffs asserted was error.[134]  The Ninth Circuit affirmed the district court's balancing of the competing interests and expressly held that "[e]conomic harm may indeed be a factor in considering the balance of equitable interests."[135]

---

[131] *Id.* at 467.

[132] *Id.* at 467–68.

[133] *Id.* at 474–75.

[134] *Id.* at 475.

[135] *Id.* (first citing *Amoco Prod. Co.*, 480 U.S. at 545; and then citing *Lands Council*, 537 F.3d at 1005).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 33 of 44

Case 3:23-cv-00058-SLG   Document 74   Filed 04/03/23   Page 33 of 44

As was the case in *Earth Island Institute*, there are substantial economic interests at issue in this case. An injunction halting the Winter 2023 Construction Activities would have an immediate economic impact on Nuiqsut, the closest community to the proposed Willow Project. The unemployment rate in Nuiqsut is 13%, and although "most oil industry jobs require specific skillsets and are filled by workers from outside the North Slope," the "[c]onstruction, transportation, and utilities . . . associated with . . . the oil industry" provide local jobs.[136] The jobs for the Winter 2023 Construction Activities are seasonal and Joe Sovalik, who was born and raised in Nuiqsut, explains that "[i]t is common for people in Nuiqsut to do seasonal work" as a way "to support our families."[137]

Intervenor-Defendants have filed numerous declarations showing that Nuiqsut residents are relying on the seasonal jobs and income associated with the Winter 2023 Construction Activities. For example, Thomas Bourdon hired 86 people "to provide lodging, food, and other services for Willow this winter," but if construction is stopped, those jobs will be lost. He maintains that these 86 persons "are just my employees, not the people driving gravel trucks and building ice roads for other contractors."[138] Indeed, Nuiqsut resident Jonas Sikvayugak "expect[s] to

---

[136] Final SEIS at 291–92.

[137] Docket 48-8 at 2, ¶ 4 (Case No. 3:23-cv-00058-SLG).

[138] Docket 48-9 at 3, ¶ 7 (Case No. 3:23-cv-00058-SLG).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 34 of 44

Case 3:23-cv-00058-SLG   Document 74   Filed 04/03/23   Page 34 of 44

be driving gravel trucks at the new Willow mine site" this winter and is relying on the income for his daughter's braces and to buy ammunition and fuel for subsistence hunting.[139]  Christopher Ledgerwood, the General Manager of Nanuq, Inc., states that "Nanuq's Willow work for this construction season would provide approximately 20 positions for Nuiqsut residents."[140]  And Nellie Kaigelak, who also lives in Nuiqsut, explains that Kuukpik has employed four people since the Willow Project was approved to monitor construction activities at the ice road and future mine site.  She explains that these jobs "are some of the best jobs in Nuiqsut for local residents" because they pay "a very good wage" and "keep locals connected to the land even while industry is operating there."[141]

If the Winter 2023 Construction Activities do not go forward, these economic harms would extend beyond Nuiqsut.  The Arctic Slope Regional Corporation ("ASRC") maintains that a preliminary injunction would negatively impact its shareholders "by delaying the Project's many benefits, including job opportunities, workforce development and training programs, tax revenues, grant-making capabilities for needed community projects and services, and additional dividend income the Project will bring" at a time when local subsistence communities are

---

[139] Docket 48-7 at 2, ¶ 5 (Case No. 3:23-cv-00058-SLG).

[140] Docket 53-4 at 1–2, ¶¶ 2, 5 (Case No. 3:23-cv-00061-SLG).

[141] Docket 53-2 at 6–7, ¶¶ 15–16 (Case No. 3:23-cv-00058-SLG).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 35 of 44

Case 3:23-cv-00058-SLG   Document 74   Filed 04/03/23   Page 35 of 44

struggling "to rebound from pandemic-induced economic hardship."[142]  The Acting

Commissioner of the Alaska Department of Labor and Workforce Development

maintains that a delay in the Project "would have real impacts to employment

outcome for Alaskans, especially for Alaskans living near the Willow Project,

including the residents of Nuiqsut."[143]  In addition to these economic harms to

Alaskans, the Court presumes that ConocoPhillips will experience some economic

impact if the Winter 2023 Construction Activities were enjoined because

ConocoPhillips has already spent money to build ice roads this season that it would

not be able to recoup.[144]  However, it bears noting that ConocoPhillips began

construction this winter knowing that there was a substantial likelihood that

Plaintiffs would seek an injunction to halt construction.[145]

---

[142] Docket 50 at 4, 12 (Case No. 3:23-cv-00058-SLG).

[143] Docket 52-2 at 1–2, ¶ 1–2 (Case No. 3:23-cv-00058-SLG).

[144] ConocoPhillips did not provide evidence as to what its economic loss would be for this year. Instead, ConocoPhillips contends that an injunction would place the entire project at risk because their leases are set to expire in September 2029 if Willow does not produce oil.  Docket 48 at 48–49 (Case No. 3:23-cv-00058-SLG).  However, the NPRPA provides that "[n]o lease issued under this section covering lands capable of producing oil or gas in paying quantities shall expire because the lessee fails to produce the same due to circumstances beyond the control of the lessee."  42 U.S.C. § 6506a(i)(6).   Plaintiffs' lawsuits challenging the ROD are circumstances beyond the control of ConocoPhillips.  Moreover, the persuasiveness of ConocoPhillips' argument that the entire Willow Project is at risk by a temporary injunction is undermined by record evidence showing how these leases have been extended with no production.  Docket 24-7 at 4 (Case No. 3:23-cv-00061-SLG) (list of ConocoPhillips' oil and gas leases for NPR-A beginning in 1999).

[145] Docket 22-1 at 3–4, ¶ 6 (Case No. 3:23-cv-00058-SLG) (Counsel for ConocoPhillips contacted counsel for Trustees for Alaska the same day BLM issued the ROD, expressing ConocoPhillips' intent to intervene in this case and begin Winter 2023 Construction Activities).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 36 of 44

Case 3:23-cv-00058-SLG   Document 74   Filed 04/03/23   Page 36 of 44

The Court also considers the impact of the Winter 2023 Construction Activities to subsistence hunters. Nuiqsut resident Mr. Kunaknana in particular worries that the planned winter construction will disrupt his ability to hunt for caribou this winter.[146] The Court acknowledges the importance of subsistence hunting to the Nuiqsut community and the gravity of Mr. Kunaknana's concerns. And yet the Supreme Court in *Amoco Production Co. v. Village of Gambell* observed that subsistence uses are not "always more important than development of energy resources, or other uses of federal lands."[147] In that case, the plaintiffs sought a preliminary injunction against an oil and gas lease sale that they alleged would interfere with their aboriginal rights to hunt and fish.[148] The district court held that, while the plaintiffs "had established a strong likelihood of success on the merits," injunctive relief was inappropriate because "the balance of irreparable harm did not favor [them,] . . . the public interest favored continued oil exploration," and such exploration would "not significantly restrict subsistence resources."[149] The Supreme Court agreed with the district court's analysis and held that "injury to subsistence resources from [oil and gas] exploration was not at all probable" in

---

[146] Docket 23-10 at 8, ¶ 16 (Case No. 3:23-cv-00058-SLG).

[147] *Amoco Prod. Co.*, 480 U.S. at 545–46.

[148] *Id.* at 535.

[149] *Id.* at 539–40.

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 37 of 44

Case 3:23-cv-00058-SLG   Document 74   Filed 04/03/23   Page 37 of 44

that case.[150]  It noted that "on the other side of the balance of harms was the fact that the [oil companies] had committed approximately $70 million to exploration . . . which they would have lost without chance of recovery had exploration been enjoined."[151]  The Supreme Court's decision suggests that the economic harms, particularly to the residents of Nuiqsut and elsewhere on the North Slope, if Winter 2023 Construction Activities are enjoined, may outweigh any potential harm to subsistence hunters that construction may cause.[152]

Moreover, many subsistence hunters contend that the planned construction of a gravel road and boat ramp this winter would provide a benefit to them because they would have faster and safer access to subsistence resources.[153]  Without roads, people hunt by foot, boat, or four-wheeler in the summer and by

---

[150] *Id.* at 545.

[151] *Id.*

[152] *Lands Council*, 537 F.3d at 1005 (upholding denial of a preliminary injunction motion against project that "further[s] the public's interest in aiding the struggling local economy and preventing job loss"); *Or. Nat. Desert Ass'n v. Bushue*, 594 F. Supp. 3d 1259, 1271 (D. Or. 2022) (denying as against public interest preliminary injunction that "could impose significant financial harm, threatening jobs and livelihoods"); *Earth Island Inst. v. Gould*, No. 1:14-cv-01140-KJM-SKO, 2014 WL 4082021, at *8 (E.D. Cal. Aug. 19, 2014) (denying preliminary injunction where "[t]he potential economic losses include the potential loss of jobs in the locality"); *Protect Our Cmtys. Found. v. U.S. Dep't of Agric.*, No. 11-CV-000093 BEN (BGS), 2011 WL 13356151, at *12 (S.D. Cal. Sept. 15, 2011) ("Maintaining jobs is in the public interest." (citation omitted)).

[153] *See, e.g.*, Docket 48-3; Docket 48-4; Docket 48-5; Docket 48-6; Docket 53-2 (Case No. 3:23-cv-00058-SLG).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 38 of 44

Case 3:23-cv-00058-SLG   Document 74   Filed 04/03/23   Page 38 of 44

snowmachine in the winter.[154] Nuiqsut resident Ms. Kaigelak explains that the tundra "is very wet and marshy," so it is "easy to get [four-wheelers] stuck and there was more damage to the tundra," in addition to the fact that it "took more time[] and you couldn't go as far to find caribou."[155] Another Nuiqsut resident, Bryan Nukapigak, explains that access to caribou by boats is limited and he has "spent a lot of time waiting" for caribou to approach the river.[156] He adds that "the road extension from GMT2 will be very beneficial for subsistence access" and that these roads will also be "very beneficial for search and rescue."[157] The Kuukpik Corporation maintains that the road construction "would provide a benefit even if plaintiffs ultimately prevail" because subsistence users would "get their own road on Conoco's dime."[158] With respect to the proposed boat ramp, Ms. Kaigelak explains that it currently takes "a few hours" to access the "really good white fishing" on the Tiŋmiaqsiuġvik River, "[s]o it would be better to be able to trailer a boat to those rivers on the gravel road."[159] Overall, the record does not

---

[154] Docket 48-3 at 2, ¶ 4 (Case No. 3:23-cv-00058-SLG).

[155] Docket 53-2 at 2, ¶ 4 (Case No. 3:23-cv-00058-SLG).

[156] Docket 48-3 at 2, ¶ 4 (Case No. 3:23-cv-00058-SLG).

[157] Docket 48-3 at 3–4, ¶¶ 8–9 (Case No. 3:23-cv-00058-SLG).

[158] Docket 53 at 24 (Case No. 3:23-cv-00058-SLG).

[159] Docket 53-2 at 5–6, ¶ 11 (Case No. 3:23-cv-00058-SLG).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 39 of 44

Case 3:23-cv-00058-SLG   Document 74   Filed 04/03/23   Page 39 of 44

demonstrate that the construction of the gravel road extension and boat launch would be against the interest of most subsistence uses.

The Court also gives considerable weight to the fact that Kuukpik, the North Slope Borough, and ASRC have all intervened to express their support for the Willow Project and Winter 2023 Construction Activities.[160]   As the Final SEIS's Environmental Justice analysis recognizes, the residents of Nuiqsut are "most likely to be directly affected by social or environmental changes associated with Project development."[161]   Kuukpik explains that it "only supported Conoco's use of Kuukpik land to advance the Willow Project after much deliberation and consideration of the interests of Nuiqsut, Kuukpik's shareholders, and the residents across the North Slope and the State of Alaska, all of whom will benefit from Kuukpik and Nuiqsut shouldering some of the burdens and impacts of this Project."[162]   And yet, the Court acknowledges that support of this project is not unanimous among Alaska Natives, as demonstrated most acutely to this Court by Dr. Ahtuangaruak, Mayor of Nuiqsut, whose lengthy declaration details her concerns about the Willow Project.[163]

---

[160] Docket 47; Docket 50; Docket 53 (Case No. 3:23-cv-00058-SLG).

[161] Final SEIS at 347.

[162] Docket 53 at 28 (Case No. 3:23-cv-00058-SLG).

[163] Docket 24-23 (Case No. 3:23-cv-00061-SLG).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 40 of 44

The Ninth Circuit has explained that "[t]he public interest inquiry primarily addresses impact on non-parties rather than parties."[164] "This is particularly the case where 'the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences.'"[165] A preliminary injunction in this case would implicate issues of broader public concern that has significant public consequences. In this regard, the Court considers the fact that the Alaska House and Senate unanimously adopted a resolution on February 20, 2023, stating that "a further delay in approval or construction of the Willow project . . . is not in the public interest."[166] The Ninth Circuit has explained that "the district court should give due weight to the serious consideration of the public interest in [a] case that has already been undertaken by the responsible state officials" who acted "unanimously" with respect to "the subject of this [litigation]."[167] Indeed, the Ninth Circuit has held that "our consideration of the public interest is constrained" where unanimous legislative action has "already considered that interest." The Ninth

---

[164] *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 725 F.3d 940, 946 (9th Cir. 2013) (quoting *Bernhardt v. Los Angeles County*, 339 F.3d 920, 931 (9th Cir. 2003)).

[165] *Id.* (quoting *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009)).

[166] Docket 53-6 at 4 (Case No. 3:23-cv-00058-SLG) (House Joint Resolution No. 6).

[167] *Stormans, Inc.*, 586 F.3d at 1140; *see also Burford v. Sun Oil Co.*, 319 U.S. 315, 318 (1943) (explaining in the context of "the general regulatory system devised for the conservation of oil and gas in Texas" that it "is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy" (citation omitted)).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 41 of 44

Case 3:23-cv-00058-SLG   Document 74   Filed 04/03/23   Page 41 of 44

Circuit added, "[w]e are not sure on what basis a court could conclude that the public interest is not served by [legislative action] adopted in such a fashion."[168]  In light of the foregoing, the Court gives considerable weight to the Alaska House and Senate's unanimous conclusion that proceeding with the Winter 2023 Construction Activities is in the public interest.

Alaska's Congressional delegation has also expressed its unanimous support of the Willow Project and specifically their support for the construction activities proposed for this winter.[169]  In the amicus brief filed by the Alaska Congressional Delegation and Alaska State Legislature, they assert that "[i]t is uncontested that an injunction would kill many Alaskan jobs and deprive Alaskans of direct and indirect economic benefits associated with imminent development activities."[170]  Moreover, allowing the Winter 2023 Construction Activities to proceed would be consistent with the Congressional directive to the Secretary of

---

[168] *Golden Gate Rest. Ass'n v. City & County of San Francisco*, 512 F.3d 1112, 1126–27 (9th Cir. 2008).

[169] Docket 49-1 at 5 (Case No. 3:23-cv-00058-SLG) ("The Alaska Congressional Delegation and the Alaska State Legislature jointly file this brief because the injunction sought by Plaintiffs would do considerable harm to the public interest—including at the local, state, and national levels.").  *See also* 49-6 (Case No. 3:23-cv-00058-SLG) (September 20, 2022, letter from United States Senators Lisa Murkowski and Dan Sullivan and Representative Mary Peltola to Secretary Haaland expressing their support for the Willow Project).  This is not to say, of course, that Congressional support has been unanimous, as there have been approximately two dozen members of Congress who have publicly opposed the Willow Project.  *See, e.g.*, Docket 63-7 (Case No. 3:23-cv-00058-SLG) (letter from members of Congress to President Biden expressing opposition to the Willow Project).

[170] Docket 49-1 at 14 (Case No. 3:23-cv-00058-SLG).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 42 of 44

Case 3:23-cv-00058-SLG   Document 74   Filed 04/03/23   Page 42 of 44

Interior to conduct "an expeditious program of competitive leasing of oil and gas in the" NPR-A.[171]  The Court concludes that the strong legislative support at both the state and federal levels to proceed with the Winter 2023 Construction Activities is a factor that tips strongly against the issuance of a preliminary injunction at this time.[172]

In sum, the Court has weighed the environmental harm posed by the proposed Winter 2023 Construction Activities against the economic damages, benefits to most subsistence users, and the state and federal legislative pronouncements of the public interest that would be impacted by a preliminary injunction prohibiting these construction activities at this time, and concludes that the balance of the equities and the public interest tip sharply against preliminary injunctive relief.  The Court has further determined that Plaintiffs have not established that irreparable injury to their members is likely if Winter 2023 Construction Activities proceed.  Because all four of the *Winter* factors must be

---

[171] Pub. L. No. 96-514, 94 Stat. 2957 (1980) (codified at 42 U.S.C. § 6506a).

[172] *United States v. McIntosh*, 833 F.3d 1163, 1172 (9th Cir. 2016) ("It is 'emphatically . . . the exclusive province of the Congress not only to formulate legislative policies and mandate programs and projects, but also to establish their relative priority for the Nation. Once Congress, exercising its delegated powers, has decided the order of priorities in a given area, it is for . . . the courts to enforce them when enforcement is sought.'" (quoting *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 194 (1978))).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 43 of 44

Case 3:23-cv-00058-SLG   Document 74   Filed 04/03/23   Page 43 of 44

met to obtain preliminary injunctive relief, the Court does not reach address the likelihood of Plaintiffs' success on the merits at this time.[173]

## CONCLUSION

In light of the foregoing, SILA Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction at Docket 23 in Case No. 3:23-cv-00058-SLG and CBD Plaintiffs' Motion for Preliminary Injunction at Docket 24 in Case No. 3:23-cv-00061-SLG are each DENIED.

DATED this 3rd day of April, 2023 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[173] *See Winter*, 555 U.S. at 23–24 ("[E]ven if plaintiffs have shown irreparable injury . . . any such injury is outweighed by the public interest . . . . A proper consideration of these factors alone requires denial of the requested injunctive relief. For the same reason, we do not address the lower courts' holding . . . [with respect to] a likelihood of success on the merits."); *see also All. for the Wild Rockies*, 632 F.3d at 1135 (explaining that *Winter* "requires the plaintiff to make a showing on all four prongs").

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order Re Motions for Temporary Restraining Order and Preliminary Injunction
Page 44 of 44