UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY; WILDEARTH GUARDIANS; CITIZENS CARING FOR THE FUTURE; NEW MEXICO INTERFAITH POWER AND LIGHT**,<br><br>Plaintiffs,<br><br>v.<br><br>**U.S. DEPARTMENT OF THE INTERIOR; DEB HAALAND; U.S. BUREAU OF LAND MANAGEMENT; TRACY STONE-MANNING**,<br><br>Defendants,<br><br>**CHEVRON U.S.A. INC; OXY USA INC.; OXY USA WTP LP; ANADARKO E&P ONSHORE LLC; PETROLEUM ASSOCIATION OF WYOMING; AMERICAN PETROLEUM INSTITUTE; STATE OF WYOMING; PEAK POWDER RIVER RESOURCES, LLC; NEW MEXICO OIL AND GAS ASSOCIATION; ANSCHUTZ EXPLORATION CORPORATION; FRANKLIN MOUNTAIN ENERGY LLC**,<br><br>Intervenors-Defendants. | Civil Action No. 22-cv-01716 (TSC) |

## MEMORANDUM OPINION

Plaintiffs Center for Biological Diversity ("the Center"), WildEarth Guardians, Citizens Caring for the Future, and New Mexico Interfaith Power and Light, seek declaratory and injunctive relief to halt the production of oil and gas drilling wells approved by the U.S. Bureau

of Land Management ("BLM"). Several private and public entities intervened and then moved to dismiss the suit, alleging that Plaintiffs failed to plausibly allege Article III standing, the statute of limitations bars Plaintiffs' challenges to most of the approvals, and Plaintiffs' claims are barred because they failed to exhaust administrative remedies.

Having considered the parties' briefing and the record, the court will GRANT Intervenor-Defendants' Motion to Dismiss.

## I. BACKGROUND

On June 15, 2022, the Center, WildEarth Guardians, Citizens Caring for the Future, and New Mexico Interfaith Power and Light filed this suit against the U.S. Department of the Interior and its Secretary, Deb Haaland, as well as BLM and its Director, Tracy Stone-Manning. Compl., ECF No. 1. Plaintiffs challenge 4,366 approvals Defendants issued in response to discrete applications for permit to drill ("APDs") for oil and gas in New Mexico's Permian Basin and Wyoming's Powder River Basin. *Id.* at 1–2, 63–254. Plaintiffs claim the APD approvals violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 *et seq.*, and the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701 *et seq.*, as well as their implementing regulations. *Id.* at 2.

NEPA, ESA, and FLPMA are environmental protection statutes governing executive action. If an agency determines that a potential major federal action could have significant environmental impacts, NEPA requires the agency to prepare an Environmental Impact Statement analyzing the environmental impacts and identifying reasonable alternatives to avoid or minimize those impacts. *See* 42 U.S.C. § 4332(C); 40 C.F.R. § 1500.1(b). Then, ESA mandates that the agency ensures that the action "is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse

modification of habitat of such species." 16 U.S.C. § 1536(a)(2). Finally, FLPMA requires the Secretary of the Interior to "take any action necessary to prevent unnecessary or undue degradation of the lands." 43 U.S.C. § 1732(b).

Plaintiffs allege that the drilling of these oil and gas wells "will likely emit 490-600 million metric tons of carbon dioxide equivalent … greenhouse gas pollution over the course of their lifespans"—"a nationally and globally significant quantity of emissions." ECF No. 1 at 2. They contend that despite these significant consequences, Defendants "failed to evaluate the cumulative impacts of greenhouse gas emissions that will result from these approvals under NEPA, and failed to consider the impact of these emissions as they relate to BLM's procedural and substantive obligations under the ESA and FLPMA." *Id.* at 2–6. Plaintiffs therefore ask the court to declare the approvals unlawful, vacate the approvals, and enjoin Defendants from "approving or otherwise taking action to approve any applications for permits to drill on federal public lands and minerals until [they] have fully complied with" federal law. *Id.* at 6; *see id.* at 61–62.

Several additional entities—OXY USA Inc., OXY USA WTP LP, Anadarko E&P Onshore LLC, Petroleum Association of Wyoming, Chevron U.S.A. Inc., America Petroleum Institute, State of Wyoming, Peak Powder River Resources LLC, New Mexico Oil and Gas Association, Anschutz Exploration Corporation, and Franklin Mountain Energy LLC ("Intervenor-Defendants")—moved to intervene. *See* Mots. to Intervene, ECF Nos. 8, 12, 17,

20, 27, 32, 37, 41, 53.  The court granted those motions on November 9, 2022.  *See* ECF Nos. 75, 76.

Intervenors-Defendants moved to dismiss the Complaint on January 20, 2023.  *See* Mot. to Dismiss, ECF No. 84.  Defendants supported the motion, *see* Resp., ECF No. 91, and Plaintiffs opposed it, *see* Opp'n, ECF No. 93.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move to dismiss an action or claims for lack of subject matter jurisdiction.  To survive a Rule 12(b)(1) motion, the plaintiff must establish that the court has subject matter jurisdiction as to each claim, not just one.  *See Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017).

In assessing a motion to dismiss, "the Court must accept the allegations of the complaint as true and must construe 'the complaint in the light most favorable to the non-moving party.'" *Ctr. for Biological Diversity v. Regan*, 597 F. Supp. 3d 173, 186 (D.D.C. 2022) (citation omitted).  That said, because the court has "an affirmative obligation to ensure it is acting within the scope of its jurisdictional authority," the "factual allegations in the complaint . . . will bear closer scrutiny [than those allegations would] in resolving a 12(b)(6) motion for failure to state a claim," *Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (quotation marks and citation omitted).  In deciding the motion, the "court may consider materials outside the pleadings." *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## III. ANALYSIS

**A. Establishing Standing as an Environmental Plaintiff**

It is an "essential and unchanging part of the case-or-controversy requirement" that in order to sue in federal court, a plaintiff must establish Article III standing.  *Lujan v. Defs. of*

*Wildlife*, 504 U.S. 555, 560 (1992).  To demonstrate standing at the motion to dismiss stage, a plaintiff must plead (i) an "injury in fact," that is (ii) "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court," and that (iii) is "likely" to be "redressed by a favorable decision." *Id.* at 560–61 (cleaned up).

"Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) (citation omitted).  "Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.*

In the environmental context, that means that care and concern for the aesthetics or the well-being of the environment alone does not suffice to establish injury in fact.  *See id.* Typically, a plaintiff challenging the effect of a ruling or decision on the environment alleges injury in fact based on their "geographic proximity to the action challenged." *City of Olmsted Falls v. FAA*, 292 F.3d 261, 267 (D.C. Cir. 2002).  In other words, plaintiffs may establish standing to challenge environmental harms by alleging "that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Friends of the Earth, Inc. v. Laidlaw Env't. Servs.*, 528 U.S. 167, 183 (2000) (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)).

An organizational plaintiff can demonstrate injury either by showing that the challenged action harms its organizational interests (organizational standing), or by showing that at least one of its members has individual standing (associational standing).  Plaintiffs here focus on

associational standing, and the Center also briefly contends it has organizational standing. ECF No. 93 at 29.

An entity may establish organizational standing if it alleges "concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's activities—[that] constitutes far more than simply a setback to the organization's resources." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). In *Havens Realty*, the Supreme Court found the plaintiff had alleged injury in fact by claiming that the defendant's "steering practices have perceptibly impaired [the plaintiff's] ability to provide counseling and referral services for low- and moderate-income homeseekers." *Id.* An entity's "abstract interest in a problem," by contrast, "is insufficient to establish standing, 'no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem.'" *Am. Soc'y for Prevention of Cruelty to Animals v. Feld Ent., Inc.*, 659 F.3d 13, 24 (D.C. Cir. 2011) (quoting *Sierra Club*, 405 U.S. at 739). For example, "frustration of an organization's objectives" is such an "abstract concern." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015) (citation omitted).

In sum, the D.C. Circuit "establishes two important limitations" on organizational standing: the organization (1) "must show 'a direct conflict between the defendant's conduct and the organization's mission,'" and (2) "may not 'manufacture the injury necessary to maintain a suit from its expenditure of resources on that very suit.'" *Am. Soc'y for Prevention of Cruelty to Animals*, 659 F.3d at 25 (quoting *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996); *Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990)).

Under the associational standing doctrine, an entity may show injury by establishing that "(a) its members [or any one of them] would otherwise have standing to sue in their own right;

(b) the interests [the entity] seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *United Food and Com. Workers Union Local 751 v. Brown Grp.*, 517 U.S. 544, 553 (1996) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).  To show that a member would have standing to sue individually, the entity must "firmly establish[]" "the identity of" the individual who has suffered an injury in fact.  *Am. Chemistry Council v. Dep't of Transp.*, 468 F.3d 810, 820 (D.C. Cir. 2006).

Plaintiffs "must prove separate standing as to each agency action challenged." *Sec. Indus. & Fin. Mkts. Ass'n v. U.S. Commodity Futures Trading Comm'n*, 67 F. Supp. 3d 373, 400 (D.D.C. 2014).  Here, Plaintiffs challenge more than 4,000 agency actions.  ECF No. 1 at 63–254 (enumerating each of the 4,366 APD approvals that Plaintiffs challenge); 43 C.F.R. § 3162.3-1(c), (g)-(h) (APD application process).  They argue that the law allows them to "plot thousands of separate [APD] actions on a map," "draw a line around them," and allege that they have individual members who have a geographic nexus with "the resulting 'APD Area.'"  ECF No. 95 at 3 (quoting ECF No. 93 at 13).  But allowing plaintiffs to aggregate agency actions and assert a geographic nexus with the general areas those actions affect would jeopardize the fundamental principle that "[f]ederal courts do not exercise general legal oversight of the … Executive Branch[]." *TransUnion LLC*, 141 S. Ct at 2203.  Indeed, the Supreme Court has acknowledged that "[i]f the right to complain of one administrative deficiency automatically conferred the right to complain of all administrative deficiencies, any citizen aggrieved in one respect could bring the whole structure of state administration before the courts for review." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996).  And *TransUnion LLC* reiterated that "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each

form of relief that they seek." 141 S. Ct. at 2208. Consequently, Plaintiffs must demonstrate standing to challenge the individual APD approvals enumerated in their Complaint.

### B. Plaintiffs Lack Standing

Applying that legal framework, the court finds that Plaintiffs have not established an injury in fact either as organizational entities or in association with its individual members. Plaintiffs thus fail the standing inquiry at the first step.

Notably, only one Plaintiff—the Center—argues it has organizational standing. *See* ECF No. 93 at 29. It claims that "[p]rotecting listed species is at the heart of the Center's organizational missions" and Defendants' conduct "frustrates that mission and requires [the Center] to divert and expend resources to address impacts of these oil and gas drilling operations on listed species and public lands." *Id.* But these allegations are insufficient to establish standing. For one, the Center has not tied its mission of protecting species to any particular ADP approval, instead aggregating the anticipated harms of more than 4,000 ADP approvals. For another, the Center has not identified how its resource needs would change in response to the approvals or how it would "address the impacts" of the drilling. *See id.*

The Center contends that the D.C. Circuit's recent decision in *Humane Soc'y of the U.S. v. USDA*, 41 F.4th 564, 567 (D.C. Cir. 2022), supports its position. In that case, pursuant to a regulatory freeze order, the Department of Agriculture withdrew an equine abuse regulation after it was transmitted to the Office of the Federal Register for publication but before it was published in the Code of Federal Regulations, and took no further action on the rulemaking. *Id.* at 567. The Humane Society argued the withdrawal violated the Administrative Procedure Act. *Id.* In support of standing, it argued that the regulation's withdrawal harmed the Society by diverting its "limited time and resources away from existing horse protection work to identify,

investigate, publicize, and counteract" abusive equine activities covered by the regulation. *Id.* at 567–68. But unlike Plaintiffs here, the Humane Society alleged a specific Department of Agriculture equine abuse rule that caused it to divert its resources and described that diversion.

Plaintiffs also fail to establish associational standing because they do not identify individual members who use the areas affected by the challenged individual APDs. Nowhere in their Complaint or opposition do Plaintiffs assert any individual member's geographic nexus to any specific wells or drilling sites. Instead, they claim that individual members have a geographic nexus to the broad "APD Areas" Plaintiffs created. *E.g.*, ECF No. 93 at 13 ("Declarant Kayley Shoup was born and raised in Carlsbad …. Carlsbad is located directly within [the New Mexico APD] area."); *id.* at 16 (Declarant Rebecca Sobel "has regularly visited, hiked, camped, backpacked, floated, viewed scenery and wildlife, and generally recreated in Eddy and Lea counties, in and around the New Mexico ADP Area."); *id.* at 18 (Declarant Jeremy Nichols "regularly visits the Thunder Basic National Grassland" and surrounding areas, including those that "lie within the Wyoming APD Area"). Plaintiffs' most specific allegation is that one individual member lives in Carlsbad, New Mexico, and "Carlsbad Caverns National Park is located within five miles of where challenged wells will be drilled and due west of where hundreds of the wells will be drilled." *Id.* at 14. These attenuated allegations fall short of establishing that any individual member would have standing to challenge any of the more than 4,000 individual APD approvals.

Plaintiffs cite the Tenth Circuit's decision in *Diné Citizens Against Ruining Our Env't v. Bernhardt*, 923 F.3d 831 (10th Cir. 2019) (*Diné CARE*), in support of their position, ECF No. 93 at 11–12, but that case is distinguishable. For one, the plaintiffs in *Diné CARE* challenged an agency action stemming from a single Environmental Impact Statement that addressed almost

10,000 gas and oil wells, 923 F.3d at 836, whereas here, Plaintiffs identify no single underlying agency action applicable to the challenged ADP approvals. For another, the plaintiffs in *Diné CARE* "present[ed] affidavits showing that they regularly visited near the well sites," *Rocky Mountain Peace & Just. Ctr. v. U.S. Fish and Wildlife Serv.*, 40 F.4th 1133, 1153 (10th Cir. 2022) (citing *Diné CARE*, 923 F.3d at 841), whereas Plaintiffs in this case allege only that individual members have a geographic nexus with the "APD Areas."

Moreover, even if *Diné CARE* was not so easily distinguished, this court is not bound by the Tenth Circuit's decisions. Indeed, the Tenth Circuit has purported to reject the D.C. Circuit's understanding of standing doctrine, *see, e.g.*, *Comm. to Save the Rio Hondo v. Lucero*, 102 F.3d 445, 451–52 (10th Cir. 1996), and other courts in this district have already distinguished *Diné CARE*, which was decided before the Supreme Court's recent ruling in *TransUnion LLC*. See *S. Utah Wilderness All. v. Bernhardt*, 512 F. Supp. 3d 13, 21 (D.D.C. 2021).

In sum, Plaintiffs fail to allege a cognizable injury in fact under either an organizational standing theory or an associational standing theory, and therefore cannot establish standing. Consequently, this court lacks jurisdiction.

## IV.   CONCLUSION

For the reasons explained, the court will GRANT Intervenor-Defendants' Motion to Dismiss. An Order will accompany this Opinion.

Date: November 1, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge